## THE PEOPLE *vs.* CRILLEY.

The sale of *ale* in less quantities than five gallons, without having a license therefor, granted according to the provisions of title 9, chapter 20, of the first part of the revised statutes, is not prohibited by the 15th section of that title, nor declared a misdemeanor by the 25th section.

CERTIORARI to the oyer and terminer of the county of Dutchess, to remove a conviction of the defendant upon an indictment for a violation of the excise law.

*T. C. Campbell,* district attorney, for the people.

*H. A. Nelson,* for the defendant.

*By the Court,* S. B. STRONG, J. The defendant was tried on an indictment for a violation of the 15th section of the title

of the revised statutes, relative to excise and the regulation of taverns and groceries. (1 *R. S.* 680.) That section is in the following words: "Whoever shall sell any strong or spirituous liquors, or any wines, in any quantity less than five gallons at a time, without having a license therefor, granted as herein directed, shall forfeit twenty-five dollars." The 25th section declares that all offenses against the provisions of that title shall be deemed misdemeanors. The only proof to sustain the charge was that the defendant had sold one gill of ale, to be drank in his store. The court below charged the jury that "the sale of ale in less quantities than five gallons, without having a license therefor, granted according to the provisions of title 9, part 1, chapter 20 of the revised statutes, is a misdemeanor." To that the defendant's counsel excepted; and whether the court was right or erred in thus instructing the jury, is the only question presented for our determination.

It was decided by this court, in *Nevin* v. *Ladue*, (3 *Denio,* 43,) that ale was included in the terms strong or spirituous liquors as used in the statute, and a conviction founded simply on the defendant's confession that he had sold ale, strong beer or fermented beer, without a license therefor, was affirmed. That case was subsequently taken to the court for the correction of errors. (3 *Denio,* 437,) where the judgment of this court was reversed, on the ground that the defendant's confession was in the alternative, and did not prove that he had sold any thing stronger than common table beer. For that reason the majority of the members of the court of dernier resort who delivered written opinions, declared that the question whether ale or strong beer was within the prohibition of the excise law, did not arise in the case. Although, therefore, the opinions of the late judges of this court, and of Chancellor Walworth, who concurred with them, are entitled to great respect, yet as they were expressed upon a question not necessarily involved in the case before the court, they have not the force of authority, and we are at liberty to adopt and follow our own conclusions.

Clearly, ale is not comprehended within the term wines, as it is generally understood and applied. That term includes

the fermented juice of the grape, and possibly of other fruit. Neither is it a spirituous liquor, as spirits are manufactured by distillation ; whereas, ale is produced by fermentation. If it is included at all in the statutory prohibition, it must be under the denomination of " strong liquors." There is no statutory definition of the word " strong," as applied to liquors. Its meaning is a mere matter of inference. I do not agree with the chancellor that our legislature in passing the act were influenced by the phraseology of King James' version of the scriptures, or the language of the Egyptians, the Greeks or the Romans. I doubt much whether the framers of our statutes consult the bible, or the works of any ancient authors, for the meaning of terms, but they are governed in that respect, as I think they should be, by the authority which controls our language, the *present* usage by well informed people. The words " strong " and " weak " are relative terms, both having reference to the medium of the class to which they are applied—one being above and the other below it. The word liquors, as commonly used, includes all that are spirituous, vinous or inferior fermented, including malt. The meaning should not, I think, be extended any further for the purpose of applying relative terms designating the qualities of either class. The strength of liquors and their intoxicating powers depend upon the quantity of alcohol which they contain. Spirituous liquors contain from 53 to 56 per cent, wines from 13 (champagne) to 26 (port) per cent ; currant wine and cherry wine over 10 per cent, metheglen about $7\frac{1}{4}$ per cent, cider (the average) about $7\frac{1}{2}$ per cent, and ale (the average) about $6\frac{1}{4}$ per cent. (*Brande's Manual of Chemistry,* 1645, 1646.) If the rule of interpretation which I have mentioned should be applied to these liquors, ale being so far below the medium, could not be appropriately denominated strong. I am inclined to think that it is not originally so classed.

After all, perhaps the statute is its own best expositor. The words " strong" and " spirituous" are connected sometimes by the disjunctive, and at others by the copulative conjunction, but both are uniformly prefixed to the term liquors, without any

The People *v.* Crilley.

thing to denote separate or distinct individuality. There is some reason for inferring that both qualifications were designed to characterize the same identical subject matter. The principal objection to this interpretation is that it makes the expressions tautological, but instances of that kind are frequent in our statutes. It would seem too that the term strong was designed to apply exclusively to spirituous liquors, from the subsequent specification of crimes. That would have been superfluous and indeed improper if wines had been previously included as strong liquors. The statute would then have prohibited the unlicensed sale, first of a class, and then of a part of it. Then too in a section of the article of the revised statutes relative to the observance of Sunday, passed at the same time, (1 *R. S.* 676,) there is a prohibition against selling on that day any *ale, porter, strong* or spirituous liquors. Here, again, if ale had been included in the general expression of strong liquors, its specification would have been unnecessary and improper. The law of Massachusetts Bay, ch. 105, § 2, quoted by the defendant's counsel, makes the same distinction between ale and strong drink or spirits, and it also prevails in the English statute, 26 Geo. 2, ch. 31, § 7, 11.

It was contended by the counsel for the people, however, that the provision in the 29th section of the statute relative to excise, that no person shall be subject to be prosecuted under that act for selling metheglin, currant wine, cherry wine or cider, proved that the legislature intended to include other than spirituous liquors and wines in the regulations prescribed by the statute. Currant wine and cherry wine were undoubtedly included in the general term wines, and there was of course a sufficient reason for specially exempting them, if they were to be exempted at all. But the reason is certainly not so clear for excepting metheglin and cider, unless they had been previously included. The counsel for the defendant supposes that they were particularly excepted because spirituous liquors are applied to a considerable extent for their preservation. Possibly that may have been the reason, but provisos and exceptions are frequently inserted in our statutes to prevent the extension of some general term beyond the intent of the legislature, *pro majori cautela ;* and it is

The People *v.* Crilley.

very unsafe to apply them in such a manner as to enlarge the meaning of the general provision : and that should never be done when such provision creates a penalty or a crime.

The design of a statute is often illustrative of the meaning of its phraseology. Clearly, in the instance under consideration it was to promote the cause of temperance, by regulating the sale of a portion of the intoxicating liquors in general use. The particular aim would naturally be to prevent the indiscriminate sale of those which were supposed to be the most detrimental. Spirituous liquors were the most dangerous, then wines, and lastly inferior fermented, including malt, liquors. The statutory regulation included all spirituous liquors, and all wines except currant wine and cherry wine, which were deemed to be the weakest and the least prejudicial. The act allowed the unrestricted sale of those two liquors, and also of cider and metheglin. All of those, as we have seen, are stronger than ale, and it seems to me that our legislature could never have designed to sanction the unrestricted sale of those different kinds of liquor, and at the same time to prohibit the free sale of that which was weaker and less prejudicial. That would have been absurd ; and although our legislative bodies have sometimes made strange enactments, yet in matters of implication it is better to infer that they intended to act consistently.

In my opinion the conviction in the court below was wrong, and it must be quashed.

Conviction quashed.

[DUTCHESS GENERAL TERM, July 2, 1855. *Brown, S. B. Strong* and *Rockwell,* Justices.]