## STATE VS. FISHER.

GRAHAM LIQUOR LAW: *Applicable in general to cities — Construction of city charters — City of Racine not exempt.*

1. There is nothing in ch. 127, Laws of 1872, showing an intention to exempt therefrom any portion of the state; it is co-extensive in its operation with the original excise law (ch. 35, R. S.), of which it is amendatory; and no municipality can be held exempt therefrom, unless there is something in its charter creating such exemption.

2. The charter of the city of Racine, prior to 1866, empowered the common council, by ordinance or by-laws, " to establish rates for, and license and regulate taverns, groceries and victualling houses, and all persons

State vs. Fisher.

retailing or dealing in spirituous, vinous or fermented liquors," and declared such ordinances, rules and by-laws to have the force of laws, "provided they be not repugnant to the constitution *and laws of the United States or of this state."* Sec. 14, ch. 191, R. S., as amended by ch. 66, Laws of 1859, provides that "all laws contained in this revision shall apply to and be in force and effect in each and every city of this state so far as the same are applicable, and not inconsistent with the charter of such city." *Held,* that all general excise laws of the state were in force in Racine up to 1866.

3. Unless it be plainly manifest that such is the intention of the legislature, no provisions of a city charter will be construed as repealing, changing or modifying a general law of the state which was in force in such city before the charter was enacted.

4. In the revision of the charter of Racine by P. & L. Laws of 1866, ch. 208, the power of the city council to pass ordinances was limited as follows: "*Provided,* that they be not repugnant to *the constitution* of the United States or of *this state."* *Held,* that the revision did not exempt the city from the operation of the general excise laws of the state.

5. *Held,* therefore, that the provisions of ch. 127, Laws of 1872 (including those of sec. 1 relative to the giving of the bond there described), were in force in said city of Racine.

6. The *giving of the bonds* required by the excise law is an essential condition precedent to the *validity of the license* to sell intoxicating liquors; and a license granted without such bonds being given is no protection to the licensee.

CERTIFIED from the Circuit Court for *Racine* County.

The defendant was convicted in the circuit court on a complaint which charged him with having sold intoxicating liquor on the 10th day of December, 1872, " without first having obtained a license therefor, and executing a bond as now required by law." Such sale is charged to have been made in the city of Racine.

The case comes here on the certificate or report of the circuit judge, for the decision of this court upon certain questions of law involved therein. These questions are stated in the opinion.

It appears by such report that the defendant, at the time of the alleged sale, held a license to sell intoxicating liquor at his

place of business in said city, specified therein, for one year; which license bears date May 1, 1872, and was executed in due form by the mayor and city clerk under the seal of the city. It further appears that the defendant did not execute either of the bonds required by the excise laws of the state, or by an ordinance of said city, which ordinance was read in evidence, and forms a part of the report of the judge. But it also appears that the defendant paid the license fee fixed by the city council, and was ready with his sureties, and offered to give any bond which might be required of him. He was thereupon told "that the question whether or not any bond would be required had been submitted to the city attorney, and that his decision would be final as to the action of the city council. Afterwards the city attorney gave his opinion that no bond was necessary, whereupon the council directed license to be issued without bonds."

*F. W. Cotzhausen*, for defendant, argued that prior to the passage of the act of 1872, the general excise law of this state was not applicable to the city of Racine, the common council of which had authority under its charter to issue licenses and regulate the traffic as they might "see fit; " that the act of 1872 was properly only an amendment to the general excise law, and would not, without some special provision for that purpose, extend to cities to which that law did not apply; that unless the intention of the legislature be plainly manifest, no general law will be construed as repealing, changing or modifying any provisions of a city charter; that the act of 1872 contains no repealing clause, is not in terms made applicable to cities, and contains no language indicating an intention to supersede other laws or to make its provisions apply to municipalities where a distinct and independent power existed by charter to license and regulate at discretion. *Kellogg v. Oshkosh*, 14 Wis., 623; *Walworth Co. v. Whitewater*, 17 id., 193; *City of Janesville v. Markoe*, 18 id., 350; Dillon on Mun. Corp., sec. 54 and note. 2. He also argued that the license put in evidence by the de-

fendant was a protection to him, without any bond given either under the charter or under the act of 1872, 'such license being regular on its face, and the license fee being duly paid. (1) The offense, if any, is selling *without license.* R. S., ch. 35, sec. 5 ; Laws of 1872, ch. 127, sec. 1. The act complained of is not *malum in se*, but only *malum prohibitum.* The law is an *excise* law ; its primary object is to *raise a revenue* ; and that object is accomplished when the fee is paid. No intention to violate law exists, for the applicant complies with all the conditions which the council impose, and receives an authority, good on its face, for carrying on the business. Would it not almost appear like " laying a snare " for him, to leave him subject to prosecution under such circumstances? *Goff v. Fowler*, 3 Pick., 300. Can the state punish one of its citizens criminally for doing an act which it has itself authorized ? *Stoughton v. The State*, 5 Wis., 291. (2) If the act of licensing is regular in itself, and the license issued by a person of competent jurisdiction, no informality in any anterior proceedings should vitiate it. The supervisors or aldermen act judicially in granting or refusing a license. After they have granted a license, the clerk acts *ministerially* in issuing it, and is bound to issue it, when satisfied that the license fee has been paid. The decision of the aldermen or supervisors that the case is one in which a license should be granted, cannot be *collaterally* impeached. Should not the license, then, be held a sufficient plea to a charge of crime? *Goff v. Fowler, supra ;· Lawrence v. Gracy*, 11 Johns., 179 ; *Palmer v. Doney*, 2 Johns. Cases, 346 ; *Comm. v. Graves*, 18 Ky., (B. Mon.), 33 ; *People v. Jones*, 54 Barb., 311 ; *Porter v. Purdy*, 29 N. Y., 106. (3) It is entirely discretionary with the board of supervisors to require a bond or not, before granting a license. The provisions of the statute on that subject are *directory*, and not mandatory. Through a long series of years it has been the uninterrupted practice to so regard them ; and such practical construction will be adhered to, even though, were it *res integra*, it might be difficult to maintain it. *Harring-*

*ton v. Smith*, 28 Wis., 43 ; *Dean v. Borschenius*, 30 id., 236. This construction is also sustained by the language of sec. 11, "in cases where no bond is *required* or given."

*The Attorney General*, for the state.

LYON, J.   I. The first question submitted by the report of the circuit judge is as follows :  " Were the provisions of chapter 127 of the laws of 1872, and particularly section one of said act, in force and applicable to the city of Racine from and after the time said act took effect as a law ?"

Section one of the law of 1872 is cumulative to the general excise law of the state found in the revised statutes, chapter 35.   The general law provides that no license shall be issued or granted until the prescribed sum shall be paid therefor, and a certain bond filed with the proper clerk.   (Sections 3 and 4.) The law of 1872 provides that before the license shall be granted, not only must such sum be paid and bond filed, but a second bond, therein specified, must be given.   Section one of the law of 1872 is, therefore, nothing more or less than an amendment to the general excise law, which adds thereto a provision requiring such second or additional bond to be given before the license can lawfully be granted or issued.

The language of the law of 1872 is as general and broad as that of the original law, and it must necessarily follow that the operation of the one is coextensive with the operation of the other.   If the original excise law is in force in the city of Racine, section one of the law of 1872 must also be in force there.

Is the city of Racine exempt from the operation of chapter 35 of the revised statutes, as amended by section one of the law of 1872 ?   Surely the language employed therein is sufficiently broad and comprehensive to include that city within the scope and purview of the law.   We find no territorial limitations expressed therein.   " The aldermen of *any* incorporated city " may grant license, etc. ;  " *no* license shall be granted "

until the bond is filed ; license "shall in no case be issued " until the applicant produces to the clerk the proper evidence that he has paid the license fee ; "if *any* person shall sell," etc., without license, he shall be deemed guilty of a misdemeanor and punished ; "*no* person shall be granted a license," etc., without first giving the additional bond before mentioned ; these, and similar terms are uniformly employed to denote the persons upon whom, and the places in which, the law was designed to operate ; and no more comprehensive terms could well have been used. There is nothing in the law which shows an intention on the part of the legislature to exempt any portion of the state from its operation. It must be held, therefore, that the provisions of the law are in force in Racine, unless we can find something in the charter of "that city which exempts it therefrom.

The excise law was enacted in 1851, substantially in the form in which it appears in the revised statutes (Laws of 1851, ch. 162) ; and the city of Racine was incorporated in 1848, at the first session of the state legislature. Laws of 1848, p. 80. The act of incorporation gave the city council power to enact ordinances concerning a large number of subjects, and among these the council was empowered by ordinance or by-laws, " to establish rates for, and license and regulate taverns, groceries and victualing houses, and all persons retailing or dealing in spirituous, vinous or fermented liquors." But the same section contained the following provisions applicable to every ordinance, rule or by-law enacted by the city council : "Such ordinances, rules or by-laws are hereby declared to have the force of laws ; *provided* that they be not repugnant to the constitution *and laws* of the United States *or of this state*." Sec. 15, p. 85.

In 1861 the charter and the amendments thereto were amended and consolidated, but the above provisions were retained thereto. P. & L. Laws of 1861, ch. 98, sec. 15.

In view of these restrictions upon the power of the city council, which left the laws of the state paramount, on all sub-

jects, to any ordinance which might or could be passed, there seems to be no room to doubt that the excise law, when it was enacted in 1851, and when it was re-enacted in the revision of 1858, was in force in the city of Racine. There is nothing in the charter of 1848, or in that of 1861, which evidences an intention by the legislature to surrender its power over this subject in that city to the city council. Further than this, sec. 14, ch. 191 of the revised statutes, as amended by ch. 66, Laws of 1859, provides as follows : " All laws contained in this revision of the statutes shall apply to, and be in force and effect in each and every city in this state, so far as the same are applicable, and not inconsistent with the charter of any such city." We have seen, by the terms of the excise law contained in the revision of 1858, that it is applicable to the city of Racine, and we have also attempted to show that the provisions of that law are not inconsistent with the then existing city charter, but rather that the charter was subordinate to the law and controlled by it. The charter remained unchanged until 1866, and, up to that time, it must be held that the law under consideration was in full force in that city, by virtue of such affirmative legislation.

The charter was again revised by the provisions of ch. 208, P. & L. Laws of 1866, and in this revision the power of the city council to pass ordinances was limited as follows : " *Provided*, that they be not repugnant to the constitution of the United States or of the state of Wisconsin," omitting therefrom the term "*or laws*" which is found in the corresponding provisos in the charters of 1848 and 1861. We search in vain for any *express* provision in the charter of 1866 which repeals the excise laws of the state in that city. But, inasmuch as the city council is vested with authority to pass such ordinances " as they may deem expedient " in the matters of establishing rates of license for taverns, groceries, etc., and regulating the same and the persons dealing in intoxicating liquors, it is contended that the excise laws are thereby repealed by necessary

State vs. Fisher.

implication in that city, and the power of legislating in respect to the whole subject conferred exclusively upon the city council.

The argument of the learned counsel for the defendant is founded upon the theory that when the excise laws were enacted, the charter of the city interposed an obstacle to their operation in Racine, and he says: " Unless the intention of the legislature be plainly manifest, no general law will be construed as repealing, changing or modifying any of the provisions of the city charter." For the purposes of this case it is conceded that his position is a sound one. But we have shown that the excise laws contained in the revised statutes were applicable to, and in force in, the city of Racine when they were enacted and for many years afterwards. Is it not, then, a true proposition, that, unless the intention of the legislature be plainly manifest, no provisions of a city charter will be construed as repealing, changing or modifying a general law of the state, which was in force in such city before the charter was enacted? We think that this question must be answered affirmatively.

We are unable to find any provision in the charter of 1866 which renders it plainly manifest that the legislature intended to exempt Racine from the operation of the general excise laws of the state. For a very obvious reason, the power conferred upon the city council to enact ordinances upon the same subject matter does not manifest any such intent. The city council has authority conferred by the same charter, and equally as plenary, to enact ordinances to restrain and prohibit all descriptions of gaming; to prevent any riots, noise, disturbance or disorderly assemblages; to suppress houses of ill-fame; to prohibit the performance of secular business on Sunday; and to provide for the abatement of nuisances (title IV, sec. 3); yet, probably, no one will assert, because such authority is vested in the city council, that therefore the general laws of the state which provide for the punishment of those persons who may be convicted of riots or affrays, of gambling or keeping

gambling houses or houses of ill-fame, of violating the Sabbath, or of creating or continuing public nuisances, are repealed in the city of Racine.    If such laws are not so repealed, it must necessarily follow that the general excise laws of the state are not repealed therein.    Such was evidently the view taken by the council which enacted the ordinance of 1867 ; for that ordinance follows closely the general law in every material particular, and does not, in any manner, conflict with it.

Our conclusion is, that the first question submitted by the circuit judge for decision must be resolved in the affirmative.

II.  The next question is :  " Was the license put in evidence by the defendant a protection to him, notwithstanding no written application for a license was made, and no bond given, either under the ordinance of the city of Racine or under chapter 127 of the laws of 1872 ? "

The effect of the want of a written application for the license (which is required by the city ordinance of 1867) has not been considered.    But we are clearly of the opinion that the giving of the bonds required by law is an essential condition precedent to the validity of the license.    The bond required by the ordinance is the same as that required by the Revised Statutes, ch. 35, sec. 4.    No such bonds having been given, the license is null and void, and affords no protection to the defendant. To hold otherwise would be to hold that it is in the power of the mayor and clerk of Racine to nullify a law of the state by giving to whomsoever they please complete immunity from the consequences prescribed by such law for a violation thereof. Such a doctrine is not sustained by any case which has come under our observation, and, on principle, cannot be entertained for a moment.    The cases cited by counsel for the defendant which go farthest in that direction, are *Goff v. Fowler*, 3 Pick., 3C0; and *Commonwealth v. Graves*, 18 Ky. (B. Monroe), 33. In the former case, the license was granted by the court of sessions.    The statute required a certain certificate from the selectmen of the town.    One was given, but it was claimed

that it was informal.   It does not appear that the alleged defect
went to the jurisdiction of the court, and probably it did not.
It was held that, inasmuch as the court of sessions had neces-
sarily passed upon the certificate and adjudged it to be sufficient,
such adjudication was conclusive.   In the Kentucky case the
license was granted by a county court at a special term thereof
held for that purpose.   It was claimed that the court had no
power to hold the special term, and hence, that the license was
void.   It was held to have been within the discretion of the
county court to hold such term, and that whether there had
been an abuse of discretion could not be determined in a col-
lateral proceeding.   And the reason given for the decision is,
that, by statute, an appeal or writ of error lay to the circuit
court from the order of the county court granting such license.
It is apparent that these cases fall far short of holding that a
license issued without authority can, under any circumstances,
afford any protection to the licensee.   That such a license is no
protection has been adjudged in the following cases :  *Palmer v.*
*Doney*, 2 Johns. Cases, 346 ;  *Hauser v. The State*, 18 Ind., 106 ;
*Townsend v. The State*, 2 Blackf., 151.

An argument has been drawn from the phraseology of sec.
11, ch. 35, R. S., to the effect that there may be cases where
valid licenses are given without bonds.   That section provides
for maintaining actions against licensed dealers in intoxicating
liquors who sell to spendthrifts or drunkards after having been
forbidden to do so by competent authority.   The section gives
such an action " against such licensed person and his sureties
on his bond, in cases where such bond is given in pursuance of
this chapter, or, *in cases where no bond is required or given, then
in an action against such licensed person.*"   It may not be easy
to determine what is meant by the words in italics.   They may
have been inserted to meet a case (should one occur) where the
legislature had exempted, or might exempt, a municipality
from the operation of the excise laws, and where such munici-
pality, in regulating the traffic in intoxicating liquor, had seen

fit not to require the licensee to give bonds. Or it may mean that in a case where, as in the present one, the licensee is selling under a license void for the want of the necessary bonds, he shall be estopped to deny that he is a "licensed person" within the meaning of sec. 11, and shall be held liable, notwithstanding he has failed to give the requisite bonds. However this may be, we cannot, without doing violence *to the plain letter and spirit* of the law, construe sec. 11 as authorizing the issue of a valid license without the bonds having been given, in any case where such license is issued by virtue of the general excise law of the state.

This second question put by the circuit judge must be answered in the negative.

III. The solution of the third question in the report is indicated by what has already been said, and requires no further discussion. The question is, " Was the license conclusive on the state, or could it be shown to be irregular or void?" Our answer is, the license was not conclusive on the state, and it was competent for the prosecution to show that it was void.

*By the Court.*—The case, together with a certified copy of this opinion, will be remanded to the circuit court, and that court is advised to render judgment upon the verdict of the jury.