THE STATE OF FLORIDA, EX REL. HERMAN BASH, VS. THE COUNTY COMMISSIONERS OF JEFFERSON COUNTY, RESPONDENTS.

1. The act of March 3, 1883, to regulate the sale of intoxicating liquors, wines and beer, provides that an applicant for a license shall present a petition asking the Board of County Commissioners to grant the right "to sell such liquors, wines or beer." A petition asking for a license "to sell spirituous or intoxicating liquors, wines and beer," is a good and sufficient form of application under the act.

2. That law imposes upon the County Commissioners the duty to act upon a petition for a license to sell intoxicating liquors, and if such application is properly signed, authenticated and published, they should grant it. They have no discretion or authority to prohibit the sale of liquors by refusing to act upon a proper petition.

3. If the law had failed to require the Board of Commissioners to act upon such applications, it would have been totally inoperative to accomplish its expressed object. "Courts, in construing a statute, should, so far as the language will admit, give such a construction as will make it practicable, just and reasonably convenient."

4. A petition for a license signed by less than the majority of voters of the district was denied. At the ensuing regular meeting an additional number of names, thus making a majority, was affixed to the original petition on file and the whole duly authenticated and published: Held, That though courts would consider such

426 SUPREME COURT.

State ex rel. v. Co. Com'rs Jefferson Co.—Statement of Case.

signing of a paper already on file in judicial proceedings irregular, yet in transacting the ordinary business of the community by plain people in a simple manner the strict rules of courts should not be enforced, no fraud being imputed. And if the petitioner shows that a majority have expressed themselves it is of no consequence whether the additional names are signed to the original or to an additional petition of the same import.

5. When a petition for license to sell liquors, signed by the requisite majority of voters, duly authenticated and published, is presented to the Commissioners under the act, the applicant is entitled by law to the affirmative action of the Board ; and the Board cannot be influenced by petitions or other interference by remonstrance or by requests to erase names of signers. After the petitioner has instituted his proceedings, his acquired private right cannot be taken away by other persons attempting to discontinue them.

6. An appeal to the court on moral grounds to withhold a writ of mandamus requiring the issuing of a license to sell intoxicating liquors, and thus to annul a valid act of the Legislature by refusing to enforce it, is addressed to the wrong tribunal. The moral standard of individual judges is not the proper boundary of legislative discretion.

The County Commissioners are Chas. T. Carroll, Geo. W. Taylor, Daniel H. Bryan, James B. Roach and T. J. Moore. Upon the motion to quash the writ being overruled, one of the Commissioners, Mr. T. J. Moore, filed a return stating that the relator presented his petition to the Board of Commissioners on March 5, 1884, duly signed by a majority of the registered voters of the district, sworn to and published as required by law, and that he, Moore, voted at the meeting of the Board on that day against the resolution denying the permit, and his vote was recorded ; and that on the 12th day of March, at a meeting held after the service of the alternative writ, he moved a reversal of the former action of the Board refusing the permit, but his motion was overruled. He disclaims any denial or refusal of a permit as asked, and says he is and has always been willing to grant the permit. The relator moved to strike out the re-

turn of the other Commissioners because it "is evasive, argumentative, uncertain, insufficient," and for final judgment.

The other facts of the case are stated in the opinion.

*T. L. Clarke* and *Wm. B. Lamar* for Relator.

*R. B. Hilton* for Respondents.

Sedgwick Stat. and Con. Law, 239, 240 *et seq.* ; Best vs. Gholson, 89 Ill., 465 ; Fry vs. Chicago R. R., Co., 73 Ill., 399 ; Benton vs. Wickwire, 54 N. Y., 226 ; Rosenplaenter vs. Roesslle, 54 N. Y., 262 ; St. Louis R. R. Co. vs. Clark, 53 Mo., 214 ; Woodberry vs. Berry, 18 Ohio St., 456.

The writ of mandamus is not a writ of right. It is granted not of course, but only at the discretion of the court to whom the application is made and this discretion will not be exercised in favor of applicants unless some just and useful purpose may be answered by the writ. State Ex., &c. vs. Graves, 19 Md., 351.

The court will not grant a mandamus except when it is clear there is a legal obligation to perform the duty commanded. State vs. Jacobus, 2 Dutcher, 137.

[This was a case in which the Legislature had by an omission failed to declare specifically the duty which was sought to have discharged.]

When a mandamus was sought to compel council to approve a liquor dealer's bond, the petition for order to show cause should show respondents reason for refusal, otherwise the reason must be presumed to be sufficient and the order may be refused. Goss vs. Common Council, 44 Mich., 314.

Parties signing petition for an election for re-location of county site, may withdraw their names at any time before it was submitted to the Board, or afterwards before it was

acted on. Nebraska vs. Board County Commissioners, 10 Neb., 33.

Finally: On the strength of the authorities, I repeat, mandamus is not a writ of right. It issues at the discretion of the court when some valuable public or private purpose is to be promoted. Do the interests of the public demand the opening of a grog shop in the town of Monticello? Do the interests of the relator require that he should be aided to enter upon an occupation, which according to all history brings ruin to those engaged in it? Did I dare, I should say your honors have now, here, the opportunity, in violation of no legal principle, but in strict accordance with the highest, to make a decision which shall be as memorable as that by which Lord Camden declared the invalidity of general warrants, and that of Lord Mansfield, in the Somerset case, declaring that no slave could breathe the air of England and continue to be a slave. Those decisions were made in behalf of the great causes of human liberty. Yours will be no less important in promoting morality, good order and all the interests of State and family.

THE CHIEF-JUSTICE delivered the opinion of the court.

I. The relator presented his petition to the Commissioners for a "license to sell spirituous or intoxicating liquors, wines and beer," in the sixth election district in Jefferson county, which petition he avers contained the names of a majority of the registered voters of the district, with due proof of the signing and publication as required by law. The Commissioners refused to grant him a permit or license, and he obtained an alternative writ of mandamus from this court. Respondents moved to quash the writ, because:

*First.* The application is not in compliance with the

terms of the law, which says the application shall be to sell " liquors, wines, or beer," whereas the petition is for a license to sell " spirituous or intoxicating liquors, wines and beer."

*Second.* Because the application was for a license to sell spirituous or intoxicating liquors, wines *and* beer, whereas the authority of the Commissioners, if any they have, is to grant licenses to sell such " liquors, wines *or* beer."

*Third.* That there is nothing in the law requiring and commanding the Commissioners to grant a license or permit to sell intoxicating liquors, wines or beer, or to license the sale of anything whatever.

The language of the act of March 3, 1883, ch. 4416, is that it shall not be lawful for any person to sell any intoxicating liquors, wines or beer in any election district, in any county, except as hereinafter provided. 2. Any person wishing to sell liquors, wines or beer shall make application to the Board of County Commissioners for a license to sell such liquors, wines or beer, said application to be signed by a majority of the registered voters in such election district, the petition to be published, &c. 3. No Collector of Revenue shall issue license to any person " unless a permit is presented from the Board of County Commissioners." These are the essential points of the law applicable to this case.

As to the first ground of the motion, it is only necessary to say that the application for a license to sell *spirituous or intoxicating* liquors is in strict accord with the law in its letter and spirit, the sale of *intoxicating* liquors without license being the only thing prohibited by the first section, the second section directing how such license must be applied for. " Spirituous" and "intoxicating" liquors are understood to mean the same thing in a license law. State vs. Townley, 18 N. J., 321.

The second' ground, that the petition was for license to sell liquors, wines *and* beer, while the words of the law are "liquors, wines *or* beer," is equally untenable. A license' to sell liquors, wines *or* beer is a license to sell liquors, wines *and* beer, according to the very terms of this law. The prohibition in the first section is against the sale of intoxicating liquors, and any liquor, whether it be whiskey, wine, beer or any other kind that produces intoxication, is included in the term intoxicating liquors. People vs. Crilly, 20 Barb., 246.

The third ground is that the law does not require the County Commissioners to grant a license under any circumstances; that no duty is imposed upon them, and they can be required neither to grant or refuse a permit or license, because there is no such duty.

Previous to the passage of this act, every man who demanded a license to sell liquors and paid the required amount, was entitled to it. The purpose of this law was to prohibit this indiscriminate issuing of licenses to everybody by the Tax Collector, and confine the right to sell intoxicating liquors to such persons as could obtain the endorsement of their neighbors to be proper persons to be entrusted with it, and also to make it a source of public revenue. The right to sell such liquors was a lawful right under the license, and it is a lawful right still, expressly authorized by the Legislature, but under greater restrictions as to the manner of obtaining license and the persons' to whom the sale may be made. The law is restrictive, not prohibitory. It says, first, the sale shall not be engaged in by any person except under the conditions specified. These conditions are the presentation of a petition to the County Commissioners, signed by a majority of the registered voters of the district, which petition and signatures must be published " two weeks before the County Com-

missioners meet to hear such petition." The succeeding section forbids the Collector issuing a license " unless a permit is presented from the Board of County Commissioners."

As before remarked, the act is not prohibitory of licensing, or of selling under a license, but such sale is recognized as legitimate business, as much so as before this act. If the Commissioners decline " to hear such petition " *they prohibit* the licensing and the sale. The theory of the whole act opposes the idea of such prohibition. The title of the act is " An act *to regulate* the sale of liquors, wines and beer by the Board of County Commissioners," not to *prohibit* such sale, and the body of the act prescribes how the application shall be made to the Board " for a license to sell," and "asking the Board to grant to said applicant the right." And the Collector shall not issue a license unless a permit from the Board is given.

The question now is whether under this act the law contemplates and requires any action on the part of the Board. The mover here takes the negative, on the ground that the law does not in direct terms command action. It is not a mere question of verbal interpretation. There is no obscurity as to the meaning of the words.

According to Vattel's rules of construction of treaties : " Every interpretation that leads to an absurdity ought to be rejected." Sedgwick on Stat. & Const. Law, 270. " The interpretation which would render a treaty null and insufficient cannot be admitted." *Id.* " The rules of construction which apply to general legislation, in regard to those subjects in which the public at large is interested, are especially different from those which apply to private grants to individuals, of powers or privileges designed to be exercised with special reference to their own advantage. The former are to be expounded largely and beneficially for

the purposes for which they were enacted." *Id.*, 341; Bradley vs. R. R. Co., 21 Conn. R., 306; Dwarris, 200.

" Where the object of the Legislature is plain, and the words of the act unequivocal, courts ought to adopt such a construction as will best effectuate the intention of the Legislature; but they must not, even in order to give effect to what they may *suppose* to be the intention of the Legislature, put upon the provision of a statute a construction not supported by the *words*, even though the consequences should be to defeat the object of the act." Frye vs. C. B. & Q. R. R. Co., 78 Ill., 402; Dwarris, 202.

A legislative act is to be interpreted according to the intention of the Legislature, apparent on its face. Every technical rule, as to the construction or force of particular terms, must yield to the clear expression of the paramount will of the Legislature. 2 Pet., 662; 4 Dall., 14; 2 Cranch, 33; *id.*, 386; 3 How., 565.

Courts in construing a statute should, so far as the language will admit, give such a construction thereto as will make it practicable, just and reasonably convenient. Rosenplaenter vs. Roesslle, 54 N. Y., 262; Benton vs. Wickwire, *id.*, 226.

Governed by these established rules we inquire what was the evident intention of the Legislature in enacting this law. It is very plain to our minds that the act providing in express terms, and in accordance with the purpose expressed in its title, that it will be unlawful to sell intoxicating liquors without a license; that in order to obtain it there must be a permit granted by the County Commissioners; that an application therefor must first be presented to them " asking " them " to grant to said applicant the right," signed by a majority of the voters of the district in which he desires to carry on the business, and duly attested and published for two weeks; it is the clear duty of

the Board to ascertain whether the terms and conditions on which the applicant is entitled to the "right" have been complied with; and if they have been complied with there is no discretion given to the Board to refuse "to grant" the permit.

No judicial discretion or judgment is vested in this ministerial Board, beyond the ascertainment of facts as to the identity of the names on the registration list of the district with those sworn to be signed to the petition and witnessed, the fact of publication, and whether the number of the signers is a majority of those registered. These facts are simply facts to be ascertained by the use of the simple faculties of reading and computation—plain words and figures.

These conclusions are not reached by any strained construction of the act, or by extending its meaning beyond its expressed terms. If we were to conclude that this law did not impose any duty upon the Board of County Commissioners, and that it afforded no means by which the party complying with all the conditions necessary to obtain the "right" which the law says he may have on such conditions, the further conclusion would inevitably be that the whole law is inoperative to effect the expressed purposes of the Legislature. The only way to uphold the law is to construe it, as we think we have done, according to the plain meaning of its terms, and the clearly expressed intention of the Legislature. It is the duty of courts to carry out such intention and sustain a law, rather than condemn it, if its enforcement is practicable without adding to or subtracting from its provisions.

II. The respondents admit that the relator's petition contains the names of a majority of the registered voters of the district, and that the signatures are properly verified, and the necessary publication was made. But they say that the

petition was presented to them at a meeting on the sixth day of February, and that there were less than a majority of the names of registered voters of the district then signed to it, whereupon they refused to grant the license. That on the fifth day of March, at their regular meeting, relator presented the same petition with 27 names added to it. That the petition as first presented was in the proper custody of the Board, and could not be withdrawn for the purpose of adding names or amendment, without the proper and formal leave of the Board, which permission had not been granted, and because, for these reasons the petition was invalid, they denied the prayer of the petition. No fraud is imputed. The petition with the 27 added names had been duly published. While it would not be proper to withdraw a paper from the files of a court, or to add anything to it without leave of the court, yet we are not prepared to say that the strict rules of judicial proceedings should be applied to the conduct of citizens and County Commissioners in transacting the ordinary business of plain people, not trained to that precision of conduct which is required by the courts. It might not be politic to enforce such strict rules of practice in such affairs, as a court might require to be observed. Suppose the citizens desiring to sign the petition after the February meeting did place their names upon it while it was in the Clerk's office, or belonged there; or suppose they had signed their names to the number of 27 to the petition written on another piece of paper, and these added to the names already signed to the petition in the first instance made the majority required by law; can it be said in either case that the majority have not petitioned for the license? The objection does not go to the fact that these 27 additional voters had no right to sign a petition, but only to the fact that they signed the paper filed in the Clerk's office instead of a new

paper of like purport.  The fact remains that the requisite majority have expressed their wishes in the form required by the law.

The respondents further say that at the date of the meeting in February and in March there was in the hands of the President of the Board the petition of twenty-two of the persons who had signed the relator's petition for a license, requesting that their names might be stricken from the petition, and that the said Board would "not regard their names as favoring said petition of H. Basch;" and that if these twenty-two names were stricken off there would remain less than a majority petitioning for the license.   That this paper having the twenty-two names attached was not acted upon by the Board, only because in their judgment there were other sufficient grounds for refusing the application for a license.

The license was not refused then for want of the requisite majority of signers to relator's petition, because the request of the twenty-two was not before the Board, but "in the hands of the President." and the Board did not act upon it.

When the relator presented his petition signed by the required majority, duly proved and published as provided by law, he was entitled under the law to demand that the Board take such action that he might procure a license from the Tax Collector, and if his *right* to the license existed when he presented his application that right could not be affected by any *subsequent* erasing or withdrawing of names from the petition.   The law does not contemplate that after the petition is presented to the Board they shall be influenced in any manner, by petitions or other interference from other persons, by way of remonstrance against granting the license.

A case is cited where petitioners for the change of loca-

tion of a county seat in Nebraska went before the Board of Commissioners and had their names erased from a petition asking that an election be called for that purpose, and the names having been erased the number remaining was not enough to authorize the calling of the election. The court declined to issue a writ of mandamus, and say that in an application for the re-location of a county seat the petitioners may be regarded as *plaintiffs* in the proceeding, and any or all the signers of such a petition may withdraw their names at any time before it is presented to the Board, and if they have been improperly influenced to sign they may withdraw their names before an order for an election is made ; because the Commissioners should not call an election unless at the time of calling it more than three-fifths of the voters are in favor of it. Being regarded as plaintiffs in the proceeding the petitioners could, at any term before action taken, withdraw their suit. The State vs. Nemaha Co., 10 Neb., 32.

That case is unlike the present, because though a signer of the petition may, before action taken, demand that his name be erased, yet after the person applying has published and filed his petition for a license to be issued to himself, he has instituted a proceeding before a lawful tribunal, and acquired a private right, and the proceeding having been thus instituted other persons have no right to intervene to his injury. It would be very like allowing a witness to withdraw a suit.

In this case, however, the paper signed by the persons who wish to withdraw their signatures was not presented to the Board before the petition was filed by relator, and his proceeding thus inaugurated ; nor does it appear that it was presented to the Board at any time. It can have no influence here.

An appeal is made to the court by counsel for respond-

ents upon the grounds of public and private morality to withhold this writ. This is not a proper argument to be addressed to a judicial tribunal against the enforcement of a valid law of the State. These grounds were doubtless addressed to the Legislature to induce it to pass the act. If courts yield to it, they usurp legislative functions and make the moral sentiments of each individual judge the measure and boundary of legislative discretion.

The motion to quash the alternative writ is denied. The motion for final judgment is allowed, and a peremptory writ awarded.