THE STATE OF FLORIDA EX REL. W. S. NORMAN, RELATOR, VS. A. H. D'ALEMBERTE, TAX COLLECTOR, ETC., RESPONDENT.

1. The Board of County Commissioners under the authority conferred by sections 865, 866 R. S., to grant a permit to sell liquors, wines or beer, has no judicial power or discretion to dispense with, or add to, any of the essential statutory requirements in reference to the petition presented for that purpose, the power of the board in this respect being confined to the ascertainment of the facts as to the identity of the names on the registration list of the election district with those signed to the petition, the facts of publication, and whether or not the number of the signers is a majority of those on said registration list.

2. A permit granted by the Board of County Commissioners to sell liquors, wines or beer in an election district, on a petition signed by less than a majority of the registered voters of said district, as shown by the registration list on file at the date of application is void, and a tax collector will not be compelled by mandamus to issue a license to an applicant on such permit.

3. The municipal ordinance brought in question in this case held to be void for reasons stated in *Ex parte* Theisen, decided at this term. (30 Fla., 529, 11 South. Rep., 901).

This is a case of original jurisdiction.

The facts in the case are stated in the opinion.

*Avery & Chipley* for Relator.

*W. A. Blount* for Respondent.

MABRY, J. :

This is an original proceeding in the court. The case made for relator in the alternative writ is, that he is a citizen of the State of Florida, residing at Pensacola, and for the year prior to the first day of October, A. D. 1892, was engaged in the sale of malt and spirituous liquors in the 13th election district in the county of Escambia, said State; that prior to the expiration of his license on the first day of October, A. D. 1892, relator caused to be published in the Daily News of Pensacola, for the space of two weeks before a regular meeting of the Board of County Commissioners of said county an application for a permit to sell spirituous and malt liquors in said 13th election district, signed by a majority of the registered voters of said district in which his place of business is situated, the signatures to said application, each and every one being attached in the presence of two credible witnesses, accompanied with an affidavit of relator that each and every name or mark affixed thereto was the act and deed of the person purporting to sign the same, and that there was no fraud, bribery or deception in procuring said signatures or marks ; that said application after its publication as aforesaid was presented to the Board of County Commissioners of said county at a regular meeting, and after a hearing thereon a permit to sell such liquors in said election district was granted by said Board to relator ;

that relator filed the aforesaid permit with respondent, the tax collector in and for Escambia county, State of Florida, tendered him the sums of money which are respectively required by law for the purpose of obtaining State, county and municipal licenses for the business aforesaid, in which relator had been previously engaged, and which he desired to continue after the first day of October, A. D. 1892, for a period of one year, and demanded of him the issuance of a license for said purpose; that said respondent, tax collector, then and there refused to issue said license to relator, and still refuses so to do, notwithstanding respondent, in accordance with law, and his duty as tax collector, issued licenses to other persons within the several election districts of said county, and especially in such districts as are within the limits of the Provisional Municipality of Pensacola, with the consent of the Board of Commissioners of said municipality to sell liquors within said districts for the year beginning October the first, A. D. 1892, and notwithstanding it was claimed that some of said persons were prohibited from engaging in the business of liquor selling within said municipality by reason of an ordinance of said municipality which applied no more to relator than to other persons to whom licenses were granted; that a license to sell liquors within said Provisional Municipality was granted to one George Wilson, in a locality within said municipality without reference to the nearness of a Christian church, and to others nearer to schools than the place where relator

desires to carrry on his said business, it being claimed by respondent that the Commissioners of said municipality had power under said ordinance to discriminate in the granting of license between persons similarly situated, relator being the only person to whom such license was denied. The ordinance of said municipality upon which it is alleged that respondent relies for such discrimination is as follows, *viz:* "That every license shall state the actual location by street and number at which it shall be used, and if it be a license for the sale of malt or alcoholic drinks, that the location shall not be changed without the consent of the Board of Commissioners; nor shall any license for sale of malt or alcoholic drinks be used within four hundred and fifty feet of any school or church established at the time license is issued without the consent of this board."

The answer of respondent is substantially this, that relator has never become entitled to a license under the laws of Florida to sell spirituous and malt liquors during any part of the year beginning October 1st, 1892, in said thirteenth election district in which he proposed to sell such liquors, because relator has never procured to his application for a permit to sell such liquors the signatures of a majority of the registered voters of said election district, as shown by the registration list at the date of his said application, but that the application presented by him to the Board of County Commissioners of said county upon which a permit to sell said liquors was granted, con-

tained only one hundred and ninety-three names, and that the number of registered voters, as shown by the registration list of said election district at the time the application was made was five hundred and sixty-two, and that of the names appearing upon said application, only one hundred and five appeared upon said registration list.

It is also alleged that said Provisional Municipality did ordain the ordinance set out in the alternative writ, and under its directions respondent refused to issue license from said municipality to relator to sell liquors in said election district at the place indicated by him as the place where he intended to use the same, as said place was within four hundred and fifty feet of both a church and a school, and relator produced to respondent no consent of the Board of Commissioners of said municipality for the use of a license at such place, and it is alleged that no such consent has ever been obtained by relator; that respondent has never refused to issue to relator a State and county license to sell such liquors in said election district, and he required of respondent such licenses only if he could procure also a license from said municipality.

It is further averred in the answer that said Board of Municipal Commissioners has not consented to the use of liquor licenses in all cases within such prohibited distance, except that of relator; but, on the contrary, it has refused to consent to other applications to sell liquors within said prohibited distance; that said board has not consented to such use of such li-

censes within such prohibited distance in any cases similar to that of relator, but in each case there existed circumstances differentiating it from that of his; that the place announced by him in his application for license as the one where he intended to carry on said business was within the prohibited distance of both a church and a school, and within one hundred and fifty feet of one railroad track, and two hundred and fifty feet of another, both in constant use by trains, by which proximity the probable danger to persons influenced by liquor was increased, and also it was within one hundred and six feet of, and directly in front of, a union railroad depot at which trains are constantly arriving, and from which they are constantly departing, thus subjecting all incomers into, and outgoers from, the city of Pensacola to the annoyances and disturbances incident to the presence of a bar room, and subjecting the employes of two railroads, upon whose sobriety depends life and property, to daily and hourly temptation to abandon that sobriety, and also that said place was upon one of the most frequented thoroughfares of the city of Pensacola to which ladies and children are compelled to resort at all times in necessary passage to and fro, and that in no other case did any two of the aforesaid specified circumstances concur.

It is also alleged that said board was informed by the marshal of said municipality that he-had measured the distance between the saloon of said George Wil-

son  and the nearest school and church,  and that the distance was more than four hundred and fifty feet, and that said board acted upon such information in granting license to him, and has no knowledge to the contrary of the information conveyed by said marshal, whom it had directed to make such measurement.

To this answer relator has filed a demurrer along with a replication.  We will first dispose of the issues raised by the demurrer.  The grounds of the demurrer taken together amount to this, that the answer is insufficient in law, and fails to set forth any facts precluding relator from the relief which he prays in the alternative writ.

There are two distinct and separate defenses sought to be interposed in the answer.  The first is, that relator did not comply with the law in procuring his permit from the Board of County Commissioners of Escambia county, in this, that the election district in said county in which he proposed to sell malt and spirituous liquors, and for which said permit was procured, had at the date of the application for said permit five hundred and sixty-two registered voters, as shown by the registration list, and relator's application contained only one hundred and ninety-nine names, and that of the names appearing upon said application only one hundred and five appeared upon said registration list.

The truth of this allegation on the issues raised by the demurrer is admitted.  The statute requires that

the person, firm or corporation wishing to sell liquors, wines or beer in any election district, shall make application to the Board of County Commissioners of the county for a permit to make such sales, and said "application shall be signed by a majority of the registered voters of the election district, as shown by the registration list at the date of application," Sections 865, 866, R. S. The other requirements of the statute as to witnessing signatures, affidavit of applicant and the publication of the application are not involved here. Can respondent raise the defense which he seeks to set up in reference to a failure of relator to comply with the law in securing the permit? It is contended for relator that the Board of County Commissioners is an official body, and "what they do officially is to be taken as having been done correctly," and that respondent had no right to consider the legality of the action of the said board in granting the permit in question. It inferentially appears from the alternative writ that said election district thirteen in Escambia county is also within the limits of the Provisional Municipality of Pensacola, and the answer alleges that respondent never refused to issue to relator a State and county license, and that the latter did not require such licenses unless he could also procure a license from the said municipality. The tax collector of Escambia county, by virtue of statutory regulation, collects the taxes for the Provisional Mu-

nicipality of Pensacola ; or, in other words, he is *ex-officio* tax collector for said municipality. Chapter 3607, Laws of Florida.

Under the allegations of the answer and the demurrer thereto the question is narrowed to a refusal of respondent to issue a municipal license to relator, but we do not think it makes any difference whether he refused to issue a municipal license, or State and county license, under the state of facts set up in the answer. A permit granted by the Board of County Commissioners under such circumstances would be void, and would secure to the possessor thereof no rights whatever. Said board has no judicial power or discretion in reference to granting the permit, and can not dispense with, nor add to, any of the essential requirements of the State. In the case of the State of Florida *ex rel.* vs. Commissioners of Jefferson County, 20 Fla., 425, it was said in construing the statute that "no judicial discretion or judgment is vested in this ministerial board, beyond the ascertainment of facts as to the identity of the names on the registration list of the district with those sworn to be signed to the petition and witnessed, the facts of publication, and whether the number of the signers is a majority of those registered. These facts are simply facts to be ascertained by the use of the simple faculties of reading and computation—plain words and figures." If the relator has failed to comply with the statute in the particulars alleged in the answer, he is not entitled

to a peremptory writ of *mandamus* to force respondent to issue a license to him.    To grant the writ on such a state of facts would be to sanction its use for an admitted illegal purpose.    State *ex rel.* Edwards vs. County Commissioners of Sumter County, 22 Fla., 1.

The case of Welsford vs. Weidlein, Mayor, 23 Kansas, 601, was a proceeding by mandamus to force the respondent, as Mayor of the city of Peabody, to sign a certain license for relator to keep a dramshop for the sale of liquors in said city.    The defense interposed by respondent was that the city council had no power to grant the license, as less than a majority of the residents of said city of twenty-one years of age and over signed the petition for the license; that only 251 names were attached to it, thirty of whom were non-residents, and that 280 resident adults of the city did not sign the petition.    The statute required a petition signed by a majority of the adult residents to be presented to the town council before a license should be granted. The court held that the power to grant a license to carry on a dramshop depended upon a petition signed by a majority of the resident adults of said city, and as the city council had granted the license without the requisite petition, its action was void, and the Mayor was not bound to sign any license so ordered.    It was said :    "Without such petition the city council had no power or jurisdiction in the premises.    Not only is a petition requisite, but it must be signed by a majority of the adult residents.    Unless a majority make the request that a license be granted to the applicant,

the assent of the corporate authorities can not be legally given; if improperly given, the license is null and void." In the case of the city of Eureka vs. Davis, 21 Kansas, 578, the defendant was convicted of selling liquors when he had been granted a license in due form and properly signed. On the prosecution the city offered in evidence the list of adults required to be made and filed which contained 341 persons. The petition on which the license was granted contained only 156 names. The license was declared void, and the conviction sustained. Brewer, J., for the court, said, "that it is undoubtedly true that the council is the tribunal to which the petition must be presented, and by which its sufficiency must, in the first instance, be determine l; but such determination is not, at least as to the matter in question in this case, conclusive. Here is not a matter of judicial discretion, but a matter of mathematical calculation. The law has made a certain list conclusive as to the number of adult persons. It has not left this matter open to inquiry by the council; and it has also declared that a majority of the adult persons shall sign the petition. Now, when a petition is presented whose number of names is not half of the number on the list, no determination or finding of the council can make that a majority. That which a council may not do directly, it may not do indirectly. It may not by ordinance dispense with a petition of the majority; it may not accomplish the same result by finding that 156 is a majority of 341." It was also held in State vs. Young, 17 Kansas, 414, that the presentation to the city coun-

cil of a petition as required by the statute is an essential condition precedent to the validity of a license to sell intoxicating liquors within the limits of cities of a certain class. *Vide* also Hartford Fire Ins. Co. vs. State, 9 Kansas, 210 ; State *ex rel.* Mitchell vs. Stevens, 23 Kansas, 456 ; State vs. Moore, 1 Jones' Law (N. C.), 276 ; State vs. Fisher, 33 Wis., 154 ; House vs. State, 41 Miss., 737.

We have examined the authorities cited by counsel for relator (Troop on Public Officers, sec. 821; Mechem on Public Officers, sec. 480; Lawson on Presumptive Evidence, Rule 13, page 47; Nelson vs. People, 23 N. Y., 293; State vs. Perkins, 24 N. J., (Law), 409; Killpatrick vs Frost, 2 Grant's Cases, 168; Commissioners of Saline Co. vs. Anderson, 20 Kansas, 298, s. c., 27 Am. Rep., 171), and find that they do not conflict with the conclusions reached in the cases upon which we rely. The case at bar is clearly distinguishable from cases where an official is clothed with judicial, *quasi* judicial, or executive discretion which can not be controlled by mandamus, of which there are several in this court.

In the first paragraph of the answer there is presented a good defense to the alternative writ, but in view of the fact that further proceedings may be had on the replication filed herein, and in view of our conclusion in the case of *Ex parte* Theisen, decided at the present term of this court (30 Fla., 529, 11 South. Rep., 901) it is proper to say that the defenses set up

under the ordinance mentioned in the pleadings can not be maintained. The ordinance is void for the reasons given in the case referred to, and it is not necessary that we should repeat them here.

The demurrer to the answer must be overruled, and it is ordered accordingly.