W. B. BONACKER, L. B. BOYD, T. J. MINOR, D. C.
    LANCASTER AND T. L. HUGHES, CONSTITUTING
    THE BOARD OF COUNTY COMMISSIONERS IN AND
    FOR POLK COUNTY, PLAINTIFFS IN ERROR, VS, THE
    STATE OF FLORIDA *ex rel.* SAMUEL P. MCFARLANE,
    RELATOR, DEFENDANT IN ERROR.

1.  Whenever the local option article of the constitution has been
    put in force or active operation in a county by virtue of an
    election duly called and held, so long as it remains in force no
    license to sell intoxicating liquors, wines, or beer in that county
    can be granted, and the county commissioners of that county
    possess no power, while that article remains in force, to grant
    a permit to any person which will enable him to secure a license
    to sell intoxicating liquors, wines, or beer.
2.  The provision of Section 1, Chapter 3700, Laws 1887, commit-
    ting the matter of registration of voters for elections held there-
    under to deputy registration officers appointed by the clerks of
    the Circuit Courts, if not superseded by Chapter 3704, Laws
    1887, was no longer in force after the passage of Chapter 3879,
    approved June 4, 1889. After the act of June 4, 1889 became ef-
    fective, and while it remained in force, voters at elections held
    under said Chapter 3700 were properly registered by the super-
    visors of registration of the several counties and their deputies.

Writ of Error to the Circuit Court for Polk County.

The facts in the case are stated in the opinion of the Court.

*Eppes Tucker, Geo. P. Raney and John A. Henderson,* for Plaintiffs in Error.

*No appearance* for Defendant in Error.

CARTER, J.:

On September 20, 1895, relator filed in the Circuit Court of Polk county his petition for mandamus against the plaintiffs in error, and an alternative writ issued on the same day, which was subsequently amended. The amended alternative writ alleged that relator was over twenty-one years of age, a citizen of Polk county and a registered voter in district No. 3 of said county; that on September 3, 1895, at a regular meeting of the board of county commissioners of said county he presented his application for a permit to sell wines, liquors and beers in said election district for a term of one year from and after October 1, 1895; that said application was in writing, signed by a majority of the registered voters of said district as shown by the registration lists of the district at the time of the presentation thereof to the board; that said application was sworn to in manner and form and published as required by the statute prescribed, prior to the presentation thereof to said board; that notwithstanding relator had complied with all the requirements of the law in like case, said board being ill advised and neglectful of the rights of petitioner in the premises

denied him the right to which he is entitled under the
law and refused to grant him the permit applied for in
said application and passed an order to that effect and
had same recorded upon the minutes of the board. The
writ commanded plaintiffs in error to issue to relator a
permit to sell liquors, wines and beer in said district for
one year from October 1st, 1895, or show cause on Sep-
tember 27, 1895, why a peremptory writ of mandamus
should not be issued against them. Plaintiffs in error
moved to quash the amended alternative writ, but the
court denied the motion. Thereupon they filed their
return and such proceedings were had that on October
10, 1895, they filed their amended return alleging that
at a regular meeting of the board of county commission-
ers of Polk county for the month of November, 1891,
a written application was presented asking for an elec-
tion as provided for in Chapter 3700 laws of Florida, to
decide whether the sale of intoixcating liquors, wines
and beers should be prohibited in Polk county, there
being at that time only nineteen hundred and twenty-
three registered voters in said county as shown by the
registration books, which application was signed by
more than one-fourth of the registered voters of the
county, to-wit: about six hundred and forty registered
voters, the exact number of which could not be precisely
stated because the petition had been lost or mislaid,
whereupon it was ordered that an election be had on
December 30, 1891, to determine whether such sale
should be prohibited in Polk county or not; that there-
after any person was allowed to register at the office of
the supervisor of registration for Polk county until and
including the 20th day of December, 1891; that the
clerk of the board gave at least thirty days' notice of
said election by publishing the same in one newspaper

in each town in said county, by publishing said notice in the "South Florida Progress," a newspaper published in the town of Fort Meade, Florida, in its issues of November 14, 21, 28 and December 5, 1891, also the "Courier-Informant," a newspaper published in the town of Bartow, Florida, in its issues of November 12, 19, 26, and December 3, 10 and 17th, 1891; also in the "Lakeland Advocate," a newspaper published in the town of Lakeland, Florida, in its issues of November 14, 21, 28, and December 5 and 12, 1891, the above towns being the only incorporated towns in said county at that time that on December 7, 1891, the board appointed clerks and inspectors of election for the several precincts in said county for the aforesaid special election to be held December 30, 1891, to determine whether the sale of intoxicating liquors, wines or beers should be prohibited in said county; that said inspectors so appointed and qualified as in cases of general election did canvass the vote cast and make returns of the same to the county commissionrs within five days after said election, from which canvass and return so made it appeared that at said election on December 30, 1891, the whole number of votes cast for selling was one hundred and twenty-five, and the whole number of votes cast against selling was five hundred and twenty-four, which result so ascertained was made a part of the records of the board of county commissioners on January 4th, 1892, since which time it hath not been otherwise determined by an election held in Polk county in pursuance of the constitution and laws of Florida, and no court or judge in the State of Florida has yet declared the aforesaid election illegal and void. Plaintiffs in error admitted in their return that relator presented a petition asking for a permit to sell liquors, wines and beers in election district No. 3 in

Polk county, but alleged that they did not know whether it was signed by a majority of the registered voters of said precinct, as they did not examine or consider said petition at all, and they submitted to the court the question whether they had any duty to perform in relation to granting permits for or licensing such sales.

The amended return was demurred to, the ground of demurrer being that it failed to state facts which in law constitute a defence to the case made by the alternative writ, for it (the return) is contradictory, uncertain, evasive and otherwise insufficient.

The demurrer to the amended return was sustained, and plaintiffs in error not desiring to amend, final judgment was given upon the demurrer, directing a peremptory writ to issue commanding plaintiffs in error to perform the acts mentioned in the alternative writ. From this judgment plaintiffs in error sued out writ of error, which the court below directed should operate as a supersedeas, and plaintiffs in error executed and filed their supersedeas bond, conditioned, among other things, to pay costs and damages in case the judgment be affirmed, or the writ of error quashed, or the appellate proceedings dismissed by the appellate court.

One of the errors assigned is that the court erred in sustaining the demurrer to the amended return and in rendering judgment against plaintiffs in error. The defendant in error has not favored us with an argument in support of the judgment of the court below, nor are we advised of the precise grounds upon which the Circuit Court based its ruling that the amended return was bad. A careful consideration of the case convinces us that the facts alleged in the return were entirely sufficient to defeat the application for the peremptory writ, and we fail to see wherein the return is contradictory, uncertain,

evasive or otherwise insufficient as contended by the demurrer.    Cason v. State, 37 Fla. 331, 20 South. Rep. 547.    It is too plain to admit of argument that whenever the Local Option Article of the constitution has been put in force or active operation in a county by virtue of an election duly called and held, that so long as it remains in force no license to sell intoxicating liquors, wines or beer in that county can be granted, and that the county commissioners of that county possess no power while that article remains in force to grant a permit to any person which will enable him to secure a license to sell intoxicating liquors, wines or beer therein. Butler v. State, 25 Fla. 347, 6 South. Rep. 67; Stringer v. State, 32 Fla. 238, 13 South. Rep. 450; State *ex rel.* Mira v. Smith, 26 Fla. 427, 7 South. Rep. 848; Cason v. State, *supra*.    The brief for plaintiffs in error states that it was argued by relator in the court below; that the county commissioners could not know anything as to the result of an election held to determine whether the sale of intoxicating liquors, wines and beer should be prohibited; that upon an application such   as   relator made to them they could look only to the provisions of the statute requiring them to issue a permit whenever a written application signed by a majority of the registered voters of the election district properly published was presented, and that the election set forth in the return was void because the clerk of the Circuit Court did not register the voters for the election alleged to have been held December 30, 1891.    We have seen that it would have been unlawful for a license to issue to relator authorizing him to sell intoxicating liquors, wines and beer in Polk county after the Local Option Article had been put in force and while it remained in force in

23

that county, and that no duty devolved upon plaintiffs in error to grant permits for such sales while that article remains in force. The returns of this election were made to plaintiffs in error and the law required them to receive and keep such returns in their official custody as records of the result of the election (County Commissioners of Franklin County v. State *ex rel.* Patton, 24 Fla. 55, 3 South. Rep. 471), and it was not only their privilege but their duty to inform themselves of the result of the elction held, because upon that result, if the election was valid, their authority to issue permits to sell intoxicating liquors, wines and beer thereafter would depend. If the result of that election was to put the Local Option Article in force, it would be unlawful for relator to sell intoxicating liquors, wines and beer in that county, and the court will not grant mandamus where it is sought to enable relator to do an unlawful act. State *ex rel.* Norman v. D'Alemberte, 30 Fla. 545, 11 South. Rep. 905.

It is true that the first section of Chapter 3700, approved June 2nd, 1887, under which the election mentioned in the return was held, provides that within three days after ordering the election the clerk of the Circuit Court shall appoint deputy registration officers in each voting precinct in the county and furnish them with proper registration books in which to register all persons who may be entitled to registration under the laws of the State, and requires the deputy registration officers to register all persons entitled to registration as in case of general election and to return the registration books to the clerk of the Circuit Court at least five days before the election, and that the return in this case shows that the clerk of the Circuit Court did not comply with this provision in the present instance, but that per-

sons were allowed to register at the office of the super-
visor of registration of Polk county until ten days prior
to the day of election. The provision referred to in sec-
tion 1, Chapter 3700, was evidently inserted in view of
legislation then existing which constituted clerks of the
Circuit Court registration officers in their respective
counties and to render registration provided for in that
act harmonious with the general legislation relating to
registration. But by Chapter 3704, approved June 7,
1887, five days later a new system for registration was
enacted providing for the appointment of supervisors of
registration in the several counties who were required
to keep their offices at the county seats and given charge
of the registration of electors, and it was made the duty
of the clerks of the several counties on demand of the
supervisors to deliver to such supervisors all registration
lists, books and papers connected therewith relating to
the regitration of electors, in their possession at the time
of such demand. By Chapter 3879, approved June 4th,
1889, Chapter 3704 and all laws or parts of laws inconsis-
tent or in conflict with its provisions were repealed, and
it made provision for the appointment of supervisors of
registration of electors for the several counties, required
them to keep their offices at the county sites and gave
them exclusive charge of the registration of electors,
enumerating very minutely their duties as such officers.
They were thereby required to appoint district registra-
tion officers who are authorized and required to open
district registration books for registration for general
elections, and the county registration books in each
county are required to be closed on the second Saturday
in September in each year in which there shall be a
general election. Section 9 contains this provision:
"And no person shall be allowed to register at any other

time than during the period herein provided for the opening of said books for registration, but the supervisor of registration may in his discretion allow persons to be registered at any time within ten days of any election, in cases of special hardship under the operation of the law'; *provided*, that any person shall be allowed to register at the office of the supervisor of registration at any time after the ordering and ten days before the holding of any special election held in any county, such registration, however, to be confined to the county or counties in which such special election shall be held." We think it clear that the provision of section 1, Chapter 3700, committing the matter of registration of voters for elections held thereunder, to deputy registration officers appointed by the clerks of the Circuit Court, was not in force when the election in this case was held, and that voters for that election were properly registered by the supervisor of registration of electors for Polk county.

The judgment of the Circuit Court is reversed.