# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JANUARY TERM, A. D. 1886.

THE STATE OF FLORIDA, EX REL. A. N. EDWARDS, VS. THE COUNTY COMMISSIONERS OF SUMTER COUNTY, RESPONDENTS.

1. The allegations of a return or an answer to an alternative writ of mandamus, should be stated positively, and not upon information and belief.

2. The rules requiring pleas to be sworn to does not restrict a defendant to pleading matters of defence which are within his personal knowledge. The affidavit is required as an evidence of the pleader's good faith in setting up the defence.

3. If the alternative writ in a proceeding to compel the County Commissioners of a county to issue a permit under Chapter 3416, Laws of Florida, granting the right to sell liquors, wines or beer, makes the necessary allegation that the petition to the Commissioners was signed by a majority of the registered voters of the election district, and the return to the writ alleges in a proper manner that certain names appearing thereon as petitioners were not signed by, and the signing thereof is not the act and deed of, the persons represented by such names, and that without such names the petition does not contain a majority of the registered voters of the district, a material issue will be raised, and the burden will be upon the relator to prove his averment.

4. The applicant for the right to sell liquors, wines or beers, under the above statute, may sign his own petition and is to be counted the same as any other registered voter of the election district.

5. The simple failure to publish the "marks" of a few petitioners whose names are published, is not a material defect in complying with the provisions of the statute.

6. Although the statute requires that each petitioner shall sign the petition in the presence of two credible witnesses, it does not require the witnesses to subscribe to such signing.

7. A person who has not obtained a permit from the County Commissioners under Chapter 3416, Laws of Florida, cannot lawfully carry on the business of a liquor dealer : such a permit is a warrant not only of the right, but also of the personal fitness, of the person to whom it may have been issued to conduct such business, upon obtaining a license from the Collector of Revenue under Chapter 3413, and is not transferable.

8. The assignment of a liquor license issued under chapter 3413 to one who had not obtained such a permit, by another who has such a permit, does not vest the former with the legal right to conduct the business of a liquor dealer, and before he can lawfully become the assignee of such liquor license, issued under the latter act, and be vested with the legal right to carry on the business of a liquor dealer, he must, himself, have obtained a permit, under Chapter 3416, from the County Commissioners.

9. A person who has obtained a permit under chapter 3416 may , during the license year (which is from October 1st to October 1st of the next year) or during such part of it as may not have expired when the permit is granted, carry on the business of a liquor dealer at as many places in the election district as he may obtain liquor licenses for, under chapter 3413, from the Collector of Revenue, or by assignment from another who may have lawfully obtained them from such collector.

10. A mandamus will not issue to enable a person to effect an illegal purpose, e. g. to compel the County Commissioners to issue a permit to sell liquors under Chapter 3416 to one whose purpose is to transfer the same, and a license to be issued by the Collector of Revenue, to another who has not complied with such statute, and to thereby enable him to carry on the business of a liquor dealer unlawfully.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*H. H. Herndon, Calhoun Davis & Gillis* for the motion.

*Hocker & Mabry, contra.*

MR. JUSTICE RANEY delivered the opinion of the court:

The relator has moved to quash the amended return filed by respondents.

The statements of the first, third and fifth paragraphs are pleaded on information and belief. We do not think this is a proper form of allegation in this, if it is in any, common law pleading. We have seen and can recall no form of a plea at common law in which it has been used. The statement of the defence should be positive. Of course we do not mean that a defendant is confined to pleading matters which are within his own personal knowledge. The rule requiring pleas to be sworn to was never intended to have any such restrictive effect. The affidavit is required as an evidence of the pleader's good faith. Subject to these remarks we will consider the several defences set up in this return.

The first defence is that the names of thirty-five persons purporting to have signed the petition presented to the County Commissioners were not signed by such persons, and that the signing of their names is not their act and deed. The names of the persons are given, and it is alleged that without them the petition does not contain a majority of the names of the registered voters in the election district. The alternative writ alleges that the petition for the permit was signed by a majority of such registered voters. This is a material averment, and if not true the County Commissioners were not called upon to grant the permit, nor could this court rightfully compel them to do it. The return, then, if this defence were properly pleaded, would

raise a material issue, and before we could grant the writ the relator would have to prove his allegation, but, as indicated above, it is not properly pleaded.

When a party seeks the aid of the writ of mandamus to secure a right, he must show that he is entitled to such right. The absence of judicial power in the Board of County Commissioners does not take away any of the requirements of the statute as to the relator's rights, nor does it render illegal a rejection of a permit by the Board when he has failed to comply with such requirements substantially. We feel justified in saying, however, that County Commissioners, when a petition is in proper form, and the other provisions of the statute have been substantially complied with, should never deny the permit unless they are well satisfied that there has been a failure to comply in some material respect with the requirements of the statute. It should not be denied unadvisedly. The presumption, when the proceedings taken under the statute are in form, are all in favor of the petitioner. When the law has been complied with, to have a permit is his right, and any untenable obstacle thrown by them in his way, on the plea of being guardians of the public, is a mistake as to duty, and not only does an individual a great wrong but may bring contempt upon the law they are really violating under an effort at protecting the public.

2. The second defence is that the relator himself has signed as a petitioner. If he is a registered voter he has the right to sign his name as one of the petitioners and to be counted as such in making the majority. Candidates for office vote for themselves and are counted, and the fact that a candidate's majority was one would not make a tie vote in law, because his own vote was necessary to the majority. The statute no more excludes him than it does any other registered voter.

3. We do not think that a simple failure to publish the marks of a few petitioners, whose names are published, is at all material. The publication of the names identifies the petitioners sufficiently for all the practical purposes for which the publication was intended. No question is raised as to the identity of the signers, nor is the omission of the marks charged to have been made for any improper purpose, or even intentionally.

4. Although the statute requires that the petitioners shall each sign in the presence of two witnesses, it nowhere requires that the witnesses shall subscribe or attest the signatures. The fourth paragraph does not allege that Richardson did not, in fact, sign in the presence of two witnesses. The same rule applies to the signing of the other petitioners' names in the paragraph.

5. The fifth defence is, that since November 3, 1885, the day of the rejection of the petition by the Board of County Commissioners, and on the 15th day of December, before the issuance of the alternative writ, the petitioner bargained and sold to Wm. Henshaw and to J. R. Teegarden, to one, or both, all his interest in the petition and application, and which are the foundation of the mandamus proceedings, and that relator has now no interest in the former, and allows the use of his name in these judicial proceedings to obtain a permit and license with the purpose and intention of transferring the same to Henshaw and Teegarden when obtained, and not for the purpose or with the intention of himself engaging in business as a dealer in liquors, wines or beers.

The eleventh section of the general revenue act of 1883 (Chapter 3413) provides that "all licenses may be transferred, with the approval of the Comptroller, with the business for which they were taken out when there is a *bona fide* sale and transfer of the business, but such transferred license shall not be held to be good for any longer time or

any other place than that for which it was originally issued." If this provision alone controls the assignment of a liquor license, then a person who has obtained a permit from the County Commissioners, and upon it a license from the Collector of Revenue after paying the license tax and fee, may transfer the license to any party to whom he may also make a *bona fide* sale of the business covered by it, provided the Comptroller approves of such transfer. The above section of chapter 3413 is not, however, the sole statutory regulation of this subject so far as liquor licenses are concerned. Section 2, chapter 3416, providing for a petition to and permit from the County Commissioners, enacts, in effect, that from and after its assage it shall not be lawful for any person or persons, firm or firms, to sell any intoxicating liquors, wines or beer in any election district in any county in this State, unless he has complied with the provisions of such act. In other words, unless he has obtained a permit from the County Commissioners, as provided thereby. Its seventh section provides that any person violating the provisions of said act shall be amenable to the penalties then prescribed by law for selling liquors without a license, and shall be tried in the manner prescribed by the same. These two acts were passed by the Legislature at the same session, and were pending at the same time, and neither received the sanction of the Governor till after the adjournment of the Legislature. They were enacted as concurrent regulations of the same subject, and have been held by this court (19 Fla., 595,) to be in entire harmony as to their practical operation, and though the general revenue law was, in fact, approved two days after the other, it does not repeal the other, but they are *in pari materia*, and are to be construed as one act. The fact is, that chapter 3413 is a revision of the general revenue law of 1881, (chapter 3219,) and re-enacts

its penal provisions as to selling liquors without a license. The consequence then is that any person who carries on the business of a liquor dealer without having obtained a permit from the County Commissioners, is as much liable to the penalty denounced by the general revenue act of 1883 as he would be if he had failed to pay for and obtain a license from the Collector of Revenue. Assuming then that one person who has complied with the provisions of both acts should, in fact, transfer his license to another who had not complied with chapter 3416, and even that the Comptroller had approved such transfer, still such latter person would not be entitled to carry on the business of a liquor dealer. The policy of chapter 3416 is, that no person shall become a liquor dealer who has not received the endorsement of a majority of the registered voters of the precinct as a fit person to be entrusted with the conduct of such business. This is the more apparent when we consider the fourth section of this act prohibiting the sale of liquors to minors and intoxicated persons. If, then, Henshaw and Teegarden be persons who have not received a permit, and the purpose of the relator is to enable them to carry on the business without doing so, then such purpose is contrary to the statute and, if successful, would be a fraud upon its policy. Persons who invoke the aid of this writ must come with clean hands. High on Extraordinary Legal Remedies, section 26, of chapter 1, and Commonwealth vs. Henry, 49 Penn. St., 530. It cannot be invoked for an illegal purpose. The defence under consideration has not, however, alleged that Henshaw and Teegarden are not persons who have such a permit. A permit under Chapter 3416 continues for the license year, as defined by section 11, of chapter 3413, (*i. e.* from October 1st of one year, to October 1st of the next year,) for which it may have been issued, or for the unexpired portion of the li-

cense year current when it issues. This section of chapter 3413 has this effect upon it, whether the time be specified in it or not, and would so limit the specification of a longer time. The permit is personal in its character, and is, in law, a warrant of the holder's right and personal fitness to conduct the business of selling liquor at any place, or as many places in the election district for which it is granted as he may desire, upon his obtaining the necessary licenses from the Revenue Collector, under chapter 3413. Of the latter, he must have one for each place, and he can obtain such license from the Collector of Revenue, or by transfer, in the manner as indicated above, from others who have complied with both acts in obtaining them, but a person who has never received such a permit cannot carry on the business of a liquor dealer, though he, in fact, may, contrary to the spirit of the law, have been possessed of licenses by a transfer.

The motion to quash must then be granted.