## EX PARTE C. THEISEN—HABEAS CORPUS.

1. The provisional municipality of the city of Pensacola can exercise the same general powers conferred on cities and towns by Section 696, Revised Statutes, to regulate and restrain all tippling, bar-rooms, and all places where beer, wine or spirituous liquor of any kind is sold at retail. or to be drank upon the premises where sold, but this section must be construed in connection with Sections 865, 866, and 867 Revised Statutes, regulating the manner of obtaining a permit and license to retail liquors, wines or beer.

2. Sections 865, 866 and 867 Revised Statutes, provide a test as to the personal fitness of the applicant to engage in the business of retailing liquors, wines or beer in counties and districts where the right to sell has not been denied by vote under the local option provisions in Sections 857 to 864, Revised Statutes ; and the foregoing provisions apply to election districts within the limits of municipal corporations, as well as to those entirely beyond such limits.

3. An ordinance of a municipal corporation, that no license for the sale of malt or alcoholic drinks shall be used within four hundred and fifty feet of any school or established church at the time said license was granted, without the consent of the council of said municipal body, is void in this, that it permits of an arbitrary discrimination by said council as to personal fitness to engage in the business of retailing, a matter exclusively under statutory regulation.

This is a case of original jurisdiction by writ of *habeas corpus.*

The facts of the case are stated in the opinion.

*J. Emmet Wolfe* and *John Eagan* for Petitioner..

*W. A. Blount* for Respondent.

MABRY, J.:

The petition of C. Theisen, filed in this court on the 3d day of November, A. D. 1892, alleges that he is detained and held in custody by Joseph Wilkins, sheriff of Escambia county, Florida, and *ex-officio* marshal of the Provisional Municipality of Pensacola, under judgment and sentence pronounced against him on the first day of November, A. D. 1892, by the President of said Provisional Municipality, and judge presiding in said municipal court, on a charge of violating an ordinance of said municipality. The detention is alleged to be unjust and contrary to law, and the grounds stated in the petition for this allegation are as follows, *viz*: That petitioner obtained from the collector of revenue of said county a State and county license as a liquor dealer for election precinct number 12 in said Escambia county, for the year commencing October the first, A. D. 1892, and ending September 30th, A. D. 1893; that prior to obtaining said license he complied in all respects with the laws of the State of Florida in reference to securing a permit from the Board of County Commissioners of said county for said license; that said election precinct number 12 in said county is within the corporate limits of the Provisional Municipality of Pensacola, and petitioner, at the same time that he obtained said State and county license, also obtained a license as

liquor dealer for same period of time, from the collector of revenue of said municipality ; that after obtaining said licenses, petitioner proceeded to carry on his business as a retail liquor dealer in said precinct 12, within the limits of said Provisional Municipality of Pensacola, when he was arrested, tried and adjudged to pay a fine of ten dollars, and to remain in the custody of the said sheriff and *ex-officio* marshal until said fine was paid ; that petitioner was arrested, tried, adjudged guilty, and is now deprived of his liberty by said municipal court on a charge of violating an ordinance of said Provisional Municipality, passed on the 12th day of September, A. D. 1892, entitled " An ordinance relating to license taxes," and which is as follows, viz : " Be it ordained that the following sections shall be added to article three, chapter fifteen, of the code of ordinances of this municipality : Section 5. That every license shall state the actual location, by street and number, at which it shall be used ; and if it be a license for the sale of malt or alcoholic drinks, that the location shall not be changed without the consent of the Board of Commissioners, nor shall any license for sale of malt or alcoholic drinks be used within four hundred and fifty feet of any school or church, established at the time license is issued, without the consent of this board. Sec. 6. That no license shall be transferred without the approval of the chairman of the finance committee, countersigned by the President of the Board. "

Petitioner admits that his place of business as liquor dealer was within the limits of four hundred and fifty feet of an established church in said Provisional Municipality at the time his said licenses were granted, and that he did not have the consent of the Board of Commissioners of said municipality to use said licenses within said limits as required by said ordinance, but it is alleged that said ordinance is not valid, for the reason that said Provisional Municipality of Pensacola has no power or authority under its charter to pass or enforce such an ordinance, and that it is in conflict with the laws of the State of Florida regulating the business, of liquor dealers, and in other respects is invalid.

The sheriff and *ex-officio* marshal, in answer to the writ of *habeas corpus*, states that he detains the petitioner under a commitment from the court of the President of the Provisional Municipality of Pensacola, issued upon a sentence by said court that said petitioner pay a fine of ten dollars, or stand committed, and that he has not paid said fine. It is also stated in the return that the proceedings against the petitioned, upon which said commitment was issued, was upon an affidavit based upon a duly ordered ordinance of the said municipality, copies of the affidavit and ordinance being attached to the return as part thereof. The ordinance is the same as that set out in the foregoing petition, and the affidavit charges that petitioner, on the 25th day of October, A. D. 1892, within the corporate limits of the Provisional Municipality of

Pensacola, said county and State, "being then and there licensed to sell malt and alcoholic drinks, used, without the consent of the Board of Commissioners of the said municipality, the said license by selling malt and alcoholic drinks within 450 feet of a church which had been established before, and was established at the time the said license was issued, in violation of the ordinance of the said provisional municipality, in such case made and provided."

The petitioner by his counsel moves the court for a discharge from custody for the reason that the return of the sheriff and *ex-officio* marshal sets up no sufficient or valid grounds for the detention of said petitioner.

The validity of the ordinance in question is involved in this case. It is contended for petitioner, in the first place, that the Provisional Municipality of Pensacola has no power or authority to pass such an ordinance; secondly, that said ordinance is in conflict with the laws of the State on the subject of regulating the business of liquor dealers ; and, thirdly, that said ordinance upon its face is unjust, oppressive, unreasonable and permits of unlawful discrimination at the uncontrolled discretion of the Board of City Commissioners. Conceding, that the Provisional Municipality of Pensacola has the authority to pass an ordinance that no licensed retail liquor dealer shall sell liquors within four hundred and fifty feet of any established school or church, and that such an ordinance would not be in conflict with the laws of the State

providing the manner of obtaining a license to carry on such business, still can it pass an ordinance like the one before us, that no license for the sale of malt or alcoholic drinks shall be used within four hundred and fifty feet of any church or school established at the time of the issuance of the license, *without the consent of the Board of Commissioners of said municipality?* Several cases are cited by counsel for petitioner wherein city ordinances that undertook to prohibit dairies, markets, laundries, and the use of steam engines, without the consent of municipal councils, have been declared void on the ground that they were not general in their operation, and permitted unjust discrimination in violation of equal rights. The case of State vs. Mahner, 43 La. Ann.,——, 9 South. Rep., 480, declared void an ordinance on the subject of dairies, making it a penalty for persons to keep more than two cows within certain prohibited limits, without the permission of the city council. The court said "there are no conditions prescribed upon which the permit may be granted. It is within the power of the city council to grant the privilege to some, to deny it to others. The discretion vested in the council is purely arbitrary. It may be exercised in the interest of a favored few. It may be controlled by partisan considerations and race prejudices, or by personal animosities. It lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented." The attempted enforcement of

an ordinance of the city of San Francisco to the effect that no person should carry on a laundry within the corporate limits of said city and the county of San Francisco without having first obtained the consent of the Board of Supervisors, except the same be located in a building constructed either of brick or stone, gave rise to much discussion, and the Supreme Court of the United States in the case of Yick Wo vs. Hopkins, Sheriff, and Wo Lee vs. Same, 118 U. S., 356, pronounced said ordinance void. Under it the city authorities, it was said in effect, could exercise arbitrary power without regard to the competency of the persons applying, or the propriety of the place selected for the carrying on of the business, and also it permitted of arbitrary and unjust discriminations founded on race differences between persons otherwise in similar circumstances. In considering the effect of the municipal ordinances of the City of Jacksonville in reference to markets, this court said in City of Jacksonville vs. Ledwith, 26 Fla., 163, 7 South. Rep., 885, that "the grant as to vending meats, *et cetera,* is one of police power, and it is to be exercised upon considerations referable to the public health or welfare of the community, and not arbitrarily, nor to create a monopoly in one or several persons, nor to prohibit the trades to which it applies. Though under it the hours of the day, the places, and the mode and manner of. and rules for conducting the business may be designated and prescribed, and the establishment of fixed

places of sale may be prohibited in localities from which their exclusion is dictated by sanitary considerations, and, as in the case of markets affording reasonably ample facilities for all who may desire to engage in vending such articles, the sales may be confined to specific places, yet all this must be done on principles of impartial and general regulation affording the same rights to all alike upon the same conditions, and not in the exercise of a partial and discretionary or arbitrary will of the law making power, or of any part of it." *Vide* also Mayor vs. Radecake, 49 Md., 217; Tiedeman's Limitations of Police Power, sections 86, 102, 103.

Counsel for respondent concedes that the consent clause in the ordinance before us confers upon the Board of Commissioners the power to discriminate between different individuals, but he insists that this does not invalidate the ordinance. He does not, as we understand, maintain that the Municipality of Pensacola can, under its powers, enact such an ordinance in reference to the ordinary vocations of life which a man has an inherent right to pursue, such as keeping a market, a dairy, or conducting a laundry, and the like, but that it does have the power to pass such an ordinance in reference to the business of retail liquor dealing, as a part of the police power of the State delegated to it. This proposition, it is evident, contains two essential elements, both of which are necessary to its maintenance. The first is, that the legislative power of the State over the subject of retailing intoxi-

cating liquors extends far enough to authorize an arbitrary. discrimination between individuals similarly situated who apply for permission to sell ; and the second is, that the Legislature has conferred such power upon the Provisional Municipality of Pensacola. If we were.. to concede, · under the authorities cited by counsel for respondent, Trageser· vs. Gray, 73 Md., 250 ; *Ex parte* Christensen, 85 Cal., 208 ; Williams vs. Walker, 107 N. C., 334 ; Mugler vs. Kansas, 123 U. S., 623 ; Crowley vs. Christensen, 137 U. S., 86, that the first element of the proposition is maintainable, this would not be sufficient to sustain the ordinance in question unless the second one is also correct to its fullest extent. It is not contended that there is any special grant of power to the Provisional Municipality of Pensacola outside of the general powers conferred on municipalities contained in the general act for the incorporation of cities and towns. The power, it is claimed, is found in Section 696 of the Revised Statutes, which provides that "the city or town council shall have power to regulate and restrain all tippling, bar-rooms and all places where beer, wine or spirituous liquor of any kind is sold at retail, or to be drank upon the premises where sold," and "to require all such places to be kept and used subject to such reasonable regulations as the council may prescribe." The petitioner has received his licenses to retail, and has complied with the law in reference to obtaining the permit of the Board of County Commissioners for this purpose. The statutory regulation in reference to obtaining the permit to retail is found in Sections

865, 866 and 867 of the Revised Statutes. No question arises here under Article XIX, Constitution of 1885, or the statutes passed in pursuance thereof, as it does not appear that any election has been held in Escambia county thereunder. The sections of the Revised Statutes above referred to—section 696, granting to cities and towns the right to regulate and restrain bar-rooms and places where liquors are retailed, and the other sections from 865 to 868 inclusive, providing the manner of obtaining a permit and license to retail liquors—must, if possible, be construed in harmony with each other. The latter sections provide that any person desiring to retail liquors, wines or beer in any election district in any county in this State, shall make application to the Board of County Commissioners of the county for a permit to sell the same, and this application must be signed by a majority of the registered voters of said district, as shown by the registration list at the date of application. There are other requirements, not necessary to mention here, such as witnessing the signatures of the signers, affidavit of the applicant and publication of the application. These sections provide a test as to the personal fitness of the applicant to engage in the business of retail liquor selling in counties and districts where the right to sell has not been denied by vote under the local option provisions in sections 857 to 864. State *ex rel.* Arpen vs. Brown, 19 Fla., 563; State *ex rel.* vs. County Commissioners of Sumter County, 22 Fla., 1; Butler and Chapman vs. State, 25 Fla., 347, 6 South.

Rep., 67. The Constitution has, by Article XIX, provided a way by election for absolute prohibition, and the Legislature has provided for the election under this article. Sections 857 to 864, R. S. It not appearing that any election has been held in Escambia county on the subject of retailing liquors, there is no absolute prohibition therein under the local option provisions of the statute. The petition statute, however, is in force, and a compliance with its requirements entitles the applicant to sell under State regulation. It is not questioned here, and there can be no doubt, but that its provisions apply to election districts within the limits of municipal corporations, as well as to districts in the interior of counties. We then have a constitutional provision to prohibit absolutely by vote, and also a statutory regulation as to the personal fitness of a applicant to engage in the business where no negative vote has been had, and these provisions applying to retailing within the limits of municipal corporations. We have no doubt that a retailer who has entitled himself to engage in the business under State regulation within the limits of a municipal corporation, is also subject to such reasonable regulations and restraints as the municipal authorities may, in a proper way, impose, but such municipal regulation and restraint can not go to the extent of arbitrary discrimination, as to locality in the district, between persons who have been recommended under the statute as suitable persons to engage in the business. To permit municipal regulation to this extent would be a denial of

the right secured under the statute as to personal fitness to engage in the business of retailing liquors. Conceding that the municipal authorities can, in the rightful exercise of police power, prohibit *in toto* the use of a license obtained under State regulation within four hundred and fifty feet of a school or church, still to permit some to use such a license within said limits, and deny it to others, at the discretion of the Board of Commissioners of said municipality, would be the exercise of arbitrary discrimination between persons who had been recommended as provided by law as suitable persons to engage in such a business. If a municipal corporation can ever exercise such a power as this, even in reference to retailing liquor, it must be clearly and unmistakably granted. We do not think such power can be claimed for municipal bodies under section 696 of the Revised Statutes, especially when construed in connection with State regulation on the subject of retailing liquor.

The authorities cited by counsel for respondent to sustain the power of the Commissioners of the Municipality of Pensacola to require their consent to retail within the prohibited limits, are *ex parte* Christensen, 85 Cal., 208; Crowley vs. Christensen, 137 U. S., 86; and Perry vs. Salt Lake City, 25 Pacific Rep., (Utah), 739, L. R. A., Book 11, page 446. The ordinance called in question in the first case provided that "no license as a retail liquor dealer, or as a grocer and retail liquor dealer, shall be issued by the collector of licenses, unless the person desiring the same shall have obtained the written consent of a majority of the

Board of Police Commissioners of the city and county of San Francisco to carry on or conduct said business; but in case of refusal of such consent, upon application, said Board of Police Commissioners shall grant the same upon the written recommendation of not less than twelve citizens of San Francisco owning real estate in the block or square in which said business of retail liquor dealer, or grocery and retail liquor dealer, is to be carried on." The objection raised to this ordinance was that it makes the license depend upon the arbitrary will and pleasure of the Board of Police Commissioners in the first instance, and of the twelve property owners in the second. This objection was overruled, and the court said " whatever force this objection might have in reference to licenses to carry on the ordinary avocations of life which are not supposed to have any injurious tendency, it has no force in the present case. It is well settled that the governing power may prohibit the manufacture and traffic in liquor altogether, provided only that it does not interfere with interstate commerce. * * And if the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases." This ordinance was sustained by the Supreme Court of the United States in the case of Crowley vs. Christensen, 137 U. S., *supra*. As is stated in the last case, the Constitution of California provides tnat "any county, city or town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general law." To the same effect in principle is the case of Tragesser

vs. Gray, 73 Md., 250. Neither of the above cases discloses that there was any State regulation on the subject of retailing, and hence the decisions were made on conditions that do not exist in the case before us. In the case of Perry vs. Salt Lake City, 25 Pacific Rep., (Utah), 739, L. R. A., Book 11, p. 446, the Supreme Court of Utah held that the grant of power to city councils to license, regulate and tax whiskey selling conferred a wide, but not an arbitrary discretion, as to persons applying for license to sell, as to places where sales are to be made and as to the number of licenses to be granted, and that such discretion may be exercised in respect to each individual case when application is made, if the matter has not been regulated by ordinance. The statute under which this decision was made gave to city councils power to license, regulate and tax the sales of intoxicating liquors, and determine the amount to be paid for such license; but it was provided that such license should not extend beyond the municipal year in which it may be granted, and that said councils shall require of all applicants a bond with like conditions as required by the general laws of the territory in that respect. Further provision was made in the statute, that counties in which cities are situated shall not require any additional license to that issued by a city. Another section in the criminal code prohibited the selling of intoxicating liquors to any person at certain places. It was said by the court expressly in the above case that "the power to license, regulate and tax the sale or disposi-

tion of intoxicating liquors within its limits is possessed by Salt Lake City, except so far as it is regulated by the above provisions.'' The statute referred to did not undertake to regulate in a different way the matters upon which the city council in the case before the court acted. Our decision in the case at bar rests upon the conclusion that the grant to municipal corporations to regulate and restrain, will not permit the enactment of an ordinance under which arbitrary discrimination may be made in respect to matters which are exclusively under statutory control and regulation. In the absence of an express declaration of intention to that effect, it must not be assumed that the legislature proposed by the grant of power to municipal corporations to regulate and restrain retail liquor dealing, to confer upon them the power to contravene and defeat State policy by ordinances inconsistent with the laws of the State on the subject. The personal fitness of an applicant to retail in any place, whether within the limits of a municipal corporation or in the interior of a county, is regulated by State law, and we think that municipal authorities have no right to arbitrarily discriminate between individuals to any extent, based solely on account of personal fitness. It is evident that the ordinance in question permits of such discrimination, and for this reason we think it is void. 1 Dillon on Municipal Corporations, (4th ed.), Section 329; City of Canton vs. Nist, 9 Ohio St., 439; Thompson vs. City of Mount Vernon 11 Ohio

St., 688 ; Mayor, etc., of the City of Hudson vs. Thorne, 7 Paige, 261 ; Smith & Lackey vs. Mayor and Aldermen of Knoxville, 3 Head, 245; Robinson vs. Mayor and Aldermen of Franklin, 1 Humphreys, 156, s. c. 34 Am. Dec., 625 ; Foster vs. Brown, 55 Iowa, 686 ; Town of New Hampton vs. Conroy, 56 Iowa, 498 ; State v. Ferguson, 33 N. H., 424 ; *Ex parte* Levy, 43 Ark., 42.

The mere fact that provision is made by State regulation for securing the license to sell, does not in our judgment exclude all municipal regulation or restraint of such business within corporate limits, but to what extent such regulation or restraint can go it is not necessary to say, as the ordinance in question is void because it permits of arbitrary discrimination in reference to matters which are now exclusively under statutory regulation, and which have not been delegated to municipal bodies.

The other questions discussed are not decided, inasmuch as the rightful detention of petitioner depends upon the validity of the ordinance set up in the petition. This being void for the reasons assigned, no other matters become essential to the disposition of the case. The motion must be sustained and the petitioner discharged, and it is ordered accordingly.