Howland v. State *ex rel.* Zirklebach et al.—Syllabus.

———

HARRY T. HOWLAND, CITY TREASURER OF THE CITY OF PENSACOLA, *Plaintiff in Error,* v. STATE *ex rel.* JOHN ZIRKLEBACH *et al., Defendants in Error.*

1. Mandamus will lie to compel a City Treasurer to issue a receipt to an applicant for a liquor license, where such receipt is a necessary step in the procurement of a license.

2. A municipal ordinance, fixing the charge for a liquor license outside a restricted area in the city at $1500 additional to that imposed in such area, is invalid, it being admitted that the costs of policing is the same and that both districts contain resident and business sections, although the municipality is empowered to pass any ordinance not in conflict with the Federal or State Constitutions or Statutes, to regulate and restrain liquor shops and to impose license taxes. (HOCKER and PARKHILL, JJ., dissenting.)

This case was decided by Division A.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*John B. Jones,* for plaintiff in error;

*Blount & Blount & Carter,* for defendants in error.

COCKRELL, J.—On April 21, 1908, the City Treasurer of Pensacola sued out his writ of error to the judgment of the circuit court entered October 26, 1908, awarding a peremptory writ of mandamus commanding the issuance of a receipt from the city as a basis for a license to John Zirklebach & Company.

The alternative writ attacks the validity of a section of an ordinance of the city of Pensacola passed September 25, 1907. The first section prohibits any one engaging in the business of a dealer in spirituous, vinous and malt liquors without payment of a license tax of one thousand dollars. The second section provides that outside a certain designated limit, the license for such dealer "shall be fifteen hundred dollars in addition to the amount prescribed in section one." The relator's place of business was outside the designated limit and he tendered the amount required under section one.

We must accept as true all the allegations of fact properly averred in the alternative writ, the defendant, plaintiff in error here, having declined to take issue thereon. From these allegations we learn that the restricted district embraces an area approximately 500 yards by 700 yards, embracing a portion of the business section of the city and also many dwellings, while the outside area of many square miles embracing a large portion of the entire business section of the city and also residences, the restricted area embraces parts of Election Districts 13 and 14, and the entire city embraces also

Election Districts 12 and 15; prior to the passage of the ordinance the restricted area contained twenty-two licensed dram shops as against eighteen outside; and that the cost of police protection and regulation is no greater in the $2500 district than in the $1000 district. It further appears that relator had been for years before in the business and had a large stock of liquors on hand and has secured his state and county license.

We think the proper remedy was pursued; the writ of mandamus has been frequently applied in kindred cases in this jurisdiction as will be shown by an examination of our Reports and would seem to be the specific adequate remedy. State *ex rel.* Bash v. County Commissioners of Jefferson County, 20 Fla. 425, text 427; State *ex rel.* Norman v. D'Alemberte, 30 Fla. 545, 11 South. Rep. 905; State *ex rel.* Hubbard v. Holmes, 53 Fla. 226, 44 South. Rep. 179.

The power to impose this discriminating license tax or permit must come if at all from certain general powers conferred by the legislature upon the city of Pensacola; there is no specific legislative authority to charge different amounts of licenses for the same kind of occupation or businesses to be conducted in different portions of the city. These general grants are "to pass for the government of the city any ordinance not in conflict with the constitution of the United States, the constitution of Florida, and statutes thereof;" "to regulate and restrain all tippling, bar-rooms and all places where beer, wines or spirituous liquors of any kind is sold at retail or to be drunk on the premises;" "Licenses shall be fixed at not exceeding fifty per cent. of the state licenses fixed by the legislature, except for purposes of restraint."

It is further contended that additional power was conferred by section 2 of Chapter 5088, Laws of 1901, whereby the city was authorized to "impose license and

occupational taxes upon all trades, professions and businesses conducted within the city limits," whereby it is claimed the city may charge more than half of the amount fixed by the State, whether for revenue, regulation or restraint.

It is unnecessary to decide now whether the later act repeals or enlarges the former. The applicant admits the right of the city to charge fourfold the amount fixed by the legislature as the state license by tendering the one thousand dollars, but objects to the discrimination whereby, under the conditions as admitted to exist, he is called upon to pay an additional fifteen hundred dollars.

Strictly as a revenue measure, the power would not seem to exist under the decision of this court in Ex parte Simms, 40 Fla. 432, 25 South. Rep. 280. There we held that under general powers the city of Jacksonville could not split up the business of selling spirituous, vinous and malt liquors, so as to impose a special tax upon the sale of beer by wholesale, differing from that imposed upon the sale of other intoxicating liquors. This scheme of discriminating in the amounts of the license tax as between different parts of the city is at variance with the settled policy of this State in charging a uniform license irrespective of the portion of the State in which the business is to be conducted; nor is this affected by requiring an additional amount to be paid the counties when the saloon is located outside a municipality, the licensee being required to pay the same amount in the latter case the county not being required to share with the municipality.

The power to regulate or restrain, short of absolute prohibition, Ex parte Theisen, 30 Fla. 529, 11 South. Rep. 901, is not an absolute, arbitrary power, but must be exercised in a reasonable manner. We indulge presump-

tions in favor of the reasonableness of an ordinance, out of deference to the superior opportunities for knowledge of the actual existing conditions in municipalities possessed by the city council over us, and we are fully alive to the powerful arguments that may be advanced in favor of restricting saloons within limits easily policed, but we are bound by the fixed rules of law requiring a close scrutiny of statutes conferring authority to impose taxes, and the suspicion always aroused by discriminations apparently excessive.

There may, it is true, be other considerations than those negatived in the alternative writ, which would support a substantial discrimination, when discrimination is authorized; but the most important are those arising from the costs of the regulation and the character of the buildings within the two sections, as being devoted to business or residence purposes.

We decide nothing now, however, but that the showing here made overcame the prima facies of reasonableness of the ordinance, and that the burden was shifted to, and unmet by the respondent.

The judgment is affirmed.

SHACKLEFORD, C. J. and WHITFIELD, J., concur;

TAYLOR, J., concurs in the opinion.

WHITFIELD, J., (*concurring*).—I concur in the opinion of Mr. Justice COCKRELL. The ordinance must rest on either the police power or the taxing power conferred upon the municipality.

The powers of the city with reference to this controversy are contained in the provisions of the general law and special acts authorizing the city to "impose license

and occupational taxes upon all trades, professions and businesses conducted within the city limits;" "to regulate and restrain all tippling, barrooms and all places where beer, wines or spirituous liquors of any kind is sold at retail, or to be drank upon the premises where sold, * * * to require all such places to be kept and used subject to such reasonable regulations as the council may prescribe; to require all keepers of such places to procure from the city or town a license for keeping the same, under such pains, penalties and forfeitures as the council may prescribe;" and "to pass for the government of the city any ordinance not in conflict with the constitution of the United States, the constitution of Florida, and statutes thereof."

The power "to regulate and restrain" and "to require all keepers of such places to procure from the city or town a license for keeping the same" is a police power. The charge for such license *as a police regulation,* is confined to the expense of issuing the license and the cost of police inspection and supervision of the business so licensed. In addition to requiring a license to be procured as a police regulation, the city is expressly authorized "to regulate and restrain * * * barrooms" by the direct and reasonable exercise of the police power given to the city as above quoted, where prohibition is not thereby unlawfully effectuated.

The power to "impose license and occupational taxes" is a taxing power, and is to be exercised within the terms of the grant and subject to the constitutional provisions for the protection of property rights. No authority is expressly given to discriminate in the amount of license tax imposed upon those engaged in the same "business conducted within the city limits." Proper classifications may be made for purposes of levying a license tax, in excess of the cost of issuing the license and the inspec-

tion and supervision of the business licensed; but such classifications should not be so unjustly discriminatory as to be unreasonable and to deprive any person of property without due process of law and to deny to any person the equal protection of the laws in violation of constitutional provisions.

Where the taxing power may be used for purposes of restraint there should be no unjust discrimination or unreasonableness in the exercise of the power.

In this case the difference of 150 per cent in the "license tax" imposed by the ordinance upon those engaged in the same business cannot under the admissions in the pleadings be said to have been made for the purpose of meeting the cost of issuing the license and of police inspection and supervision of the business, under the power given to "regulate and restrain;" therefore it must be imposed as a "license tax" as it purports on its face to be. As a "license tax" it is in amount clearly a discrimination, and while there may be a basis for a classification justifying such a discrimination in the amount of the license tax, yet the amount of the difference in the "license tax," taken with the admissions of the pleadings, appears to be sufficient to overcome the prima facies of reasonableness ordinarily indulged in favor of an ordinance, and to require some response from the city in support of the discriminating "license tax."

PARKHILL, J., (*dissenting,* and HOCKER, J., *concurs*). —The city council of Pensacola is given power to pass, for the government of the city, any ordinance not in conflict with the constitution of the United States, the constitution of Florida, and statutes thereof. § 18, Chapter 4513, Acts of 1895.

The city council is empowered particularly to *regulate* and *restrain* all tippling, bar rooms and all places where

beer, wine or spirituous liquor of any kind is sold at retail, and to require a license for keeping the same. § 1044 of the General Statutes of 1906; *Ex parte* Theisen, 30 Fla. 529, 11 South. Rep. 901.

The provisions of section 141, Chapter 4513, Acts of 1895, limits the amount of the license that may be fixed by the council to a rate not exceeding fifty per cent. of state licenses fixed by the legislature, *except for purposes of restraint;* but this limitation has been removed, in my opinion, by section 2, Chapter 5088, Acts of 1901, and section 161, Chapter 5597, Acts of 1907. Be that as it may, *for purposes of restraint,* the power of the council of Pensacola is not limited to fifty per cent. of the license fixed by the legislature. And I think the right of the council to pass the ordinance in question here is found in its power to *regulate and restrain* tippling places and bar rooms where beer, wine or spirituous liquor is sold at retail.

Under this power to regulate and restrain the sale of beer, wine or spirituous liquor, the city council of Pensacola is not authorized to entirely prohibit the sale of such liquor. Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34; *Ex parte* Thiesen, 30 Fla. 529, 11 South. Rep. 901; Sweet v. City of Wabash, 41 Ind. 7.

"While the power 'to regulate' does not authorize prohibition in a general sense, 'for the very essence of regulation is the existence of something to be regulated,' yet the weight of authority is to the effect that this power confers the authority to confine the business referred to to certain hours of the day, to certain localities or buildings in a city, and to the manner of its prosecution within these hours, localities and buildings." Ex parte Byrd, 84 Ala. 17, 4 South. Rep. 397. See also Horr & Bemis on Municipal Police Ordinance, 32.

The mere fact that provision is made by State regula-

tion for securing the license to sell liquor does not exclude municipal regulation or restraint of such business within corporate limits. Ex parte Theisen, *supra.*

The power to regulate or restrain, short of absolute prohibition, is not an arbitrary power, and must be exercised in a reasonable manner. "Every act of a municipality, through its ordinances, should be within the powers expressly conferred, should be based upon a proper classification of subjects, should be reasonable and applicable alike to all under practically similar conditions or circumstances, and should not violate any provision or principle of law." Hardee v. Brown, decided at this term.

While municipal ordinances, to be valid, must not be unreasonable, the presumption is in favor of their validity. It is, therefore, incumbent on those seeking to have them set aside as unreasonable to point out or show wherein such unreasonableness consists. People *ex rel.* Morrison v. Crigier, 138 Ill. 401, 28 N. E. Rep. 812. In Hardee v. Brown, *supra,* we said: "When the authority to act appears the correctness of the action taken thereunder may be presumed until the contrary is shown."

It is contended that this ordinance is illegal, unreasonable, unequal and partial because it arbitrarily designates a territory five hundred by seven hundred yards in size and makes the basis of the license $1000.00 and exacts $1500.00 additional where the business is carried on outside of this limited territory; while the cost of regulation and police supervision is no greater in one district than in the other, and each district embraces many residences as well as business houses.

The fact that the cost of regulation and police supervision is no greater in one district than in the other does not overcome the presumption in favor of the validity

## VOL. 56, JUNE TERM, 1908. 431

Howland v. State *ex rel.* Zirklebach et. al.—Opinion of Court.

of this ordinance. The expense of police supervision will not control the fixing of the amount of the license. By such a theory the power to regulate and restrain would be shorn of all its efficiency. Upon such a theory, the imposition of a license of $1000.00 upon the business here sought to be regulated and restrained might be held to be unreasonable, although the license fee was made to apply to all parts of the city alike. The very purpose of a high license, in excess of the amount necessary for the police supervision, is to reduce the number of saloons and to improve the character of them, and by thus reducing the number of them to lessen the evils that follow therefrom. If the license money could not exceed the mere expense of police supervision, its object would fail entirely. In Tenney v. Lenz, 16 Wis. 589, the court said: "We have no doubt, therefore, that the legislature may, in regulating any matter that is a proper subject of the police power, impose such sums for licenses as will operate as partial restriction upon the business, or upon the keeping of the particular kinds of property regulated."

In speaking of the power of the State in the exercise of its police power to fix the fee for a license for the sale of intoxicating liquor, Black on Intoxicating Liquors, Section 181, says: "Revenue is not the chief object of license laws; it is not even their primary purpose. The principal aim of such statutes is to restrict the number of persons engaging in the liquor traffic, to regulate the conduct of their business, and by such restriction and regulation, to promote the welfare and the moral health of society. They are therefore enacted in the exercise of the police power." The same author says in § 117: "A license fee is exacted primarily as a means of restricting or regulating the trade, and it con-

tinues to be such although incidentally it may produce an addition to the public revenue."

As the habit of tippling and dram drinking is considered injurious to the person and hurtful to the welfare of society, and as the liquor traffic is likely to become a burden to the community there may be charged a sum both for the purpose of restricting sales, or restricting the persons selling, and compensating the municipality for additional police expenses that may directly or indirectly result from the traffic. The amount charged is not a tax, but a burden imposed as the price of a privilege, which those controlling the municipality were empowered to restrain. Dennehy v. City of Chicago, 120 Ill. 627, 12 N. E. Rep. 227.

The Supreme Court of Georgia, in Burch v. Mayor and Alderman of Savannah, 42 Ga. 596, text 598, said: "The license fee for retailing liquors is, in no proper sense, a tax. Its object is not to raise revenue. It has, for many years, been thought that this business was one dangerous to the public peace and the public morals, and it has been the uniform practice of the country to subject it to regulations; require license from some public functionary before it is engaged in, and punish, as a crime, the pursuit of it without the license. The license is part of the *police regulations* of the country, and the fee is rather intended to prevent the indiscriminate opening of such establishments than to raise revenue by taxation. This power to regulate the sale of liquor is very generally committed, now, to the towns and cities." * * *.

Under the power to license for *regulation,* a city may require a fee which covers the expense of issuing the license and supervising the business of selling fresh meats outside of the public market, as this court held, in City of Jacksonville v. Ledwith, 26 Fla. 163, 7 South.

VOL. 56, JUNE TERM, 1908. 433

Howland v. State *ex rel.* Zirklebach et. al.—Opinion of Court.

Rep. 885, and in Atkins v. Phillips, 26 Fla. 281, 8 South. Rep. 429.

"The rule," however, "that the license fee can cover only the expense of issuing the license and regulating the business does not apply to the liquor traffic or to other occupations which are dangerous to society." 21 Am. & Eng. Ency. Law (2nd ed.) 790. And this is the difference in the rule under which this court decided the two cases just cited, and the rule that must control the instant case. In the case before us, the city of Pensacola is proceeding under the power granted to *regulate* and *restrain* the business of selling liquors and to license the same and to make rules and regulations to govern the same.

The language of the Supreme Court of Minnesota, in City of Duluth v. Krupp, 46 Minn. 435, text 437, 49 N. W. Rep. 235, is so apt on this point, and so clearly explains the power of the city under the two rules herein mentioned, that I quote at length therefrom, as follows: "The latitude that is given to municipal bodies in fixing the amount of license fees, and the duty of courts not to declare the amount thus fixed unreasonable, except in very plain cases, have been fully considered by us in former cases. See City of Mankato v. Fowler, 32 Minn. 364 (20 N. W. Rep. 361). In re White, 43 Minn. 250, (45 N. W. Rep. 232). If this was a case of one of the ordinary kinds of business like that of butcher, baker, auctioneer, or the like, which are not liable to become public nuisances, and consequently no occasion or right existed to restrict the number of persons who shall engage in it, it might be a question whether the fee exacted would not be unreasonable. But the evils liable to grow out of some occupations may be such that their suppression can only be attained to an appreciable degree by the imposition of some *restraint* upon the pursuit of

such callings or kinds of business. In respect to the great majority of occupations, no such evils are likely to follow; and consequently it would not be competent to attempt to *restrain* the number of those engaging in them by the imposition of a large license fee. All that could be required would be an amount sufficient to pay the cost of issuing the license, and to defray the expense of necessary police supervision. But where the business is of such a nature that its prosecution will do damage to the public, or that it is liable to degenerate into a public nuisance, then it is a legitimate exercise of the police power to impose a license fee large enough to act as a *restraint* upon the number of persons who might otherwise engage in such business. Tied. Lim. 274 *et seq.* It is upon this principle that high license fees are exacted from those vending intoxicating liquors." I have italicized the words "restrain" and "restraint," to show how apt they are in connection with the special power conferred upon the city to *restrain* the business of selling liquor at retail. The law makers of Florida so understood the law, because for many years the amount of license that was authorized to be fixed by the council was limited to fifty per cent. of State licenses, *except for purposes of restraint.* See also State v. Finch, 78 Minn. 118, text 123, 80 N. W. Rep. 856; City of Indianapolis v. Bieler, 138 Ind. 30, 36 N. E. Rep. 857.

I think this court was correct in its decisions in the two cases in 26 Fla., but I think the majority opinion is in error in the instant case when it says: "There may, it is true, be other considerations than those negatived in the alternative writ, which would support a substantial discrimination, when discrimination is authorized; but the most important are those arising from *the costs of the regulation* and the character of the buildings

within the two sections, as being devoted to business or residence purposes." The italics are mine.

It may be that the circumstances of the twenty-five hundred dollar district, if I may so speak of it, may require different police regulations from those demanded in the smaller district. It may be that this business of liquor selling needs greater restraint in the one district than in the other. To restrain is to limit, confine or abridge a thing. If it require a larger license fee to accomplish this object in one part of the city than in another part of the city; if, in this way, the number of saloons may be decreased and the evil attending this business be lessened in that part of the city where the council may deem such an end desirable, the council may impose such larger license fee. Where the evil from the sale of liquor is greater, a greater restraint thereof is necessary, and the larger the license fee may and must be required, the license fee being the means whereby the restraint may be effected.

It is clear that regulations which might prove effective in one part of the city might be found ineffective in another; and it would seem that to render the exercise of this power most effective, the regulations should be adapted to the wants and conditions of the different localities to which they are to be applied. Such a regulation would not subject any person to any restraint in regard to any personal right, to which all persons in the same locality or part of the city and under the like circumstances are not subjected, but all in that part of the city or locality would stand precisely upon the same footing, and no one would have any right to complain of any infraction of his constitutional rights. While it is true that the ordinance in question is not equally applicable to all parts of the city, it is equally true that it

does apply equally to all persons within the territorial limits described in the ordinance.

There is no merit in the contention that the ordinance discriminates between individuals authorized to do business under State laws. There is in the ordinance no discrimination whatever between *persons,* but all are equally at liberty to apply for and obtain licenses to carry on the business of keeping bar rooms in all parts of the territory of the city of Pensacola embraced in the two districts created by ordinance. The discrimination, if any, is only between different parts of the municipal territory, a discrimination which of course is necessarily inseparable from every attempt at partial prohibition, and which has no tendency to create what in any legal sense may be termed a monopoly. People *ex rel.* Morrison v. Cregier, 138 Ill. 401, 28 N. E. Rep. 812. And the people of these districts do not complain of this discrimination.

The ordinance in the instant case does not discriminate between individuals, as was the case Ex parte Thiesen, . *supra;* and it does not deal with liquor selling as a nuisance as in Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34.

It is a fundamental principle that there is no inherent right in a citizen or in any one to sell intoxicating liquors by retail, and that there is no vested right in any person to have a liquor license. 17 Am. & Eng. Ency. Law (2nd ed.) 236.

License fees are not considered taxation and are not governed by the constitutional provisions regarding equality and uniformity of taxation. 17 Am. & Eng. Ency. Law (2nd ed.) 270; Black on Intoxicating liquors, § 179; Chicago, P. & P. Co. v. Chicago, 88 Ill. 221, S. C. 30 Am. Rep. 545; People v. Thurber, 13 Ill. 554; City of East St. Louis v. Wehrung, 46 Ill. 392; City of

Terre Haute v. Kersey, 159 Ind. 300, 64 N. E. Rep. 469. As this business of liquor selling is inherently harmful and dangerous to society it may be regulated by license, under the police power of the city, without infringing the Fourteenth Amendment to the Federal Constitution. 21 Am. & Eng. Ency. Law (2nd ed.) 801. "The licensing of the business of selling intoxicating liquors is an exercise, not of the taxing power, but of the police power." 17 Am. & Eng. Ency. Law (2nd ed.) 209. This business is, in principle, within the police power of he State, and restrictions which may rightfully be limposed upon it that might be obnoxious as an illegal restraint of trade, when applied to other pursuits. Schwuchow v. City of Chicago, 68 Ill. 444, text 449; Adams v. Cronin, 29 Colo. 448, 69 Pac. Rep. 590, 63 L. R. A. 61. And so the license fee herein need not be uniform throughout the limits of the city; it may be differential in its character according to the locality in which the licensed shop is situated; but the ordinance must not discriminate as between persons having equal facilities for profit. Since the ordinance in question makes no discrimination in regards to persons or classes of persons as such, but only discriminates as to localities, leaving the rights, privileges and immunities of all persons in each locality precisely the same, it can not be said to offend against any State or Federal constitutional provision. It does not deny the equal protection of the laws or abridge the privileges and immunities of a citizen, nor can it be objected to on the ground that it imposes a tax or taxes private property for public use without compensation. State v. Berlin, 21 S. C. 292; City of East St. Louis v. Wehrung, 46 Ill. 392; 21 Am. & Eng. Ency. Law (2nd ed.) 801; 17 Am. & Eng. Ency. Law (2nd ed.) 208; People *ex rel.* Morrison v. Cregier, 138 Ill. 401, text 428, 28 N. E. Rep. 812; 1 Abbott on

438     SUPREME COURT OF FLORIDA,

Howland v. State *ex rel.* Zirklebach et. al.—Opinion of Court.

Municipal Corporations, § 130; Black on Intoxicating Liquors, § 232.

Neither can it be said that this ordinance is unreasonable because each district embraces many residences as well as business houses. The fact that churches, school houses, depots, &c., may be located in a particular part of the city may be good reason for including that part of the city in a district in which the evils and dangers to the public peace and good order may be lessened by a restraining license so high that only a few dealers would or could conduct the business and perhaps all who would engage in this particular business would prefer to locate in the district where the license is only $1000.00, although each district might embrace many residences as well as business houses.

It may be that a consideration of the character of the business houses and residences, also, might enter into the reasonableness of this legislation, as that, in the $1000.00 district, so to speak, the business houses and residences might be of brick and the danger from fires that might follow in the wake of the dram shops might not be as great as would the same danger to the city be if these shops were left unrestrained in all parts of the city.

In this connection, the Supreme Court of Illinois, in People *ex rel.* Morrison v. Cregier, 138 Ill. 401, text 415, 28 N. E. Rep. 812, said: "Many reasons other than the proximity of religious, educational or elemosynary institutions may exist which render it desirable and reasonable that a particular neighborhood be kept free from the influences of dram shops, and until it is shown that no such reason exists, it cannot be said that the inclusion of such neighborhood in a prohibited district is unreasonable."

The ordinance in question does not prohibit the sale of liquor in any part of the city. All persons desiring

VOL. 56, JUNE TERM, 1908.      439

Howland v. State *ex rel.* Zirklebach et. al.—Opinion of Court.

to sell liquor are placed upon an equal footing to obtain a license in the one district or the other upon equal terms. The mere fact that all such persons must pay a larger sum for a license in one district than in the other does not discriminate against any one particular individual. Can it be said that if, in its effort to protect its citizens against the well known evils and dangers attendant upon this particular business, the city might have imposed the larger tax of $2500.00 upon liquor dealers in all parts of the city, upon the idea that this high license would keep down the number of bar rooms and check and restrain this business in the city, because the city council has required a license of only $1000.00 for the sale of liquor in a portion of the city where the said business could be carried on with greater safety to the inhabitants of the city, such a regulation is unreasonable merely because there happens to be many residences as well as business houses in each district or because the cost of police supervision is no greater in one district than in the other? I think not.

There is no contention here that the amount fixed for this license is unreasonable, except the fact that in another part of the city the license exacted is much lower in amount, and no contention is made that the district wherein the relator might obtain a license for $1000.00 is so contracted that he cannot obtain a building wherein to conduct his business.

In assuming the right to judge of the reasonableness of the regulations prescribed by this ordinance, courts should not look closely into mere matters of judgment and set up their own judgment against that of the municipal authorities, when there is reasonable ground for a difference of opinion. In re Wilson, 32 Minn. 145.

It is unnecessary to allege or explain in the ordinance

the reason for its enactment or the exigency out of which it grew. Cronin v. People, 82 N. Y. 318.

The presumption being in favor of the validity of this ordinance, it is incumbent upon the relator to point out affirmatively wherein its unreasonableness consists. This, I think, the relator has not succeeded in doing.

The judgment should be reversed.